Peggy J. CONNOR et al., Plaintiffs,

v.

Cliff FINCH et al., Defendants,

and

United States of America, Plaintiff-Intervenor.

Civ. A. No. 3830(A).

United States District Court, S. D. Mississippi, Jackson Division.

Aug. 24, 1976.

---

Frank R. Parker and John L. Maxey, II, Jackson, Miss., for plaintiffs.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Gerald W. Jones and Michael D. Johnson, U. S. Dept. of Justice, Washington, D. C., for United States.

A. F. Summer, Atty. Gen. of Miss., William A. Allain and Giles W. Bryant, Jackson, Miss., for defendants.

Before COLEMAN, Circuit Judge, and RUSSELL and COX, District Judges.

COLEMAN, Circuit Judge.

For the 1979 quadrennial Mississippi legislative elections, our task is to reapportion both Houses of the Mississippi Legislature.[1]

I. *The Directions of the Supreme Court, May 19, 1976*

In an opinion dated May 19, 1976,[2] the Supreme Court held that this task should be performed agreeably to the teachings of *Mahan v. Howell*,[3] *Connor v. Williams*,[4] and *Chapman v. Meier*.[5]

While a writ of mandamus did not issue, the opinion further held that we should enter

"a final judgment embodying a permanent plan reapportioning the Mississippi Legislature in accordance with law to be applicable to the election of legislators in the 1979 quadrennial elections, and also ordering any necessary special elections to be held to coincide with the November 1976 Presidential and Congressional elections, or in any event at the earliest practicable date hereafter."

A hearing was scheduled for Wednesday, June 2. The Department of Justice was unable to appear on that date, so the hearing was rescheduled for, and held on, Tuesday, June 15, 1976.

In an effort to expedite the matter as much as possible, William D. Neal, who participated as a special master in the Court ordered reapportionments of 1967 and 1971, was appointed special master, with directions to compile the statistical data necessary to a plan for the fifty-two member State Senate.

Hoyt Holland, heretofore appointed a special master in this litigation, was directed to concentrate his efforts on similar data for the 122 member House of Representatives.

The District Court orders of June 25, 1975, July 8, 1975, and July 11, 1975, promulgating a temporary plan for the 1975 legislative elections, are not reported.

1. The previously reported decisions in this litigation are:

   *Connor v. Johnson*, 256 F.Supp. 962 (1966); 265 F.Supp. 492 (1967) (not appealed); 330 F.Supp. 506 (1971);

   *Connor v. Johnson*, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971); 330 F.Supp. 521 (1971); 404 U.S. 549, 92 S.Ct. 656, 30 L.Ed.2d 704 (1972);

   *Connor v. Waller*, 396 F.Supp. 1308; 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975). District Court citations are for the Southern District of Mississippi.

   *Connor v. Coleman*, 425 U.S. 675, 96 S.Ct. 1814, 48 L.Ed.2d 295.

2. *Connor v. Coleman, supra.*

3. 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973).

4. 404 U.S. 549, 92 S.Ct. 656, 30 L.Ed.2d 704 (1972).

5. 420 U.S. 1, 95 S.Ct. 751, 42 L.Ed.2d 766 (1975).

II. *The Practical Aspects of the Task*

The Mississippi Legislature is composed of 122 Representatives and 52 Senators (Sections 254, 255, Mississippi Constitution). In 1970 Mississippi had a population of 2,216,912. The population norm for a Senate Seat is 42,633; for a House Seat it is 18,171.

The State Constitution, Section 254, directs that "in each apportionment each county shall have not less than one Representative".

Thirty eight of Mississippi's eighty two counties have less than 18,171 people. To give every county one Representative would have the result that

"population is submerged as the controlling consideration in the apportionment of seats in this particular legislative body [and] the right of all the State's citizens to cast an effective and adequately weighted vote would be unconstitutionally impaired if we were to award one Representative to every county", *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 1392, 12 L.Ed.2d 506 (1964).

■ Within the 122 member limit there is no way by which every county may be assigned one Representative. We are thus forced to abandon this standard.

## THE INTEGRITY OF COUNTY BOUNDARIES

Since the admission of Mississippi as the twentieth state in the American Union (1817), the county has been the sole unit of state government. This has been considered to be of such critical importance that Section 260 of the Mississippi Constitution provides that no existing county boundary may be altered without the consent of a majority of the voters in the affected part of each of the counties involved.

Mississippi has a system of local and private legislation almost identical to that of Virginia, Miss.Const., 1890, Sec. 89; *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973).

Counties having more than one Representative may provide for the election of such Representative by dividing such county into districts for the election of Representatives, Miss.Const., Sec. 254.

Each county is divided into five supervisors districts, Miss.Const., Sec. 170. These districts are known as "Beats", from the early days when the county governing board was called "The Police Jury", Miss. Code of 1857, p. 414.

The Board exercises executive and judicial functions, including the valuation of property for taxation, the levy of taxes, the expenditure of public funds, the issuance of bonds, and the management of the public roads. The Constitution requires that these officials be elected from the respective Beats, which means that a voting precinct must be located entirely within the same Beat. The voting precincts are of various voting strengths, being erected for the general public convenience, consistently with community patterns.

For about 75 years Mississippi has maintained a system of permanent voter registration. Except in the rare event of a total re-registration, once a person registers to vote within the precinct of his residence he need never register again as long as he continues to reside there. Poll lists for use on election day are maintained accordingly.

From the foregoing it inexorably follows that any single member legislative district has to be constructed primarily from counties, using beats and precincts as necessary to approach or attain the required population norm.

## FRACTURING COUNTY BOUNDARIES

From the beginning of statehood the Mississippi State Senate has been elected from districts, generally composed of more than one county.

For 159 years, however, no legislative district has been formed by combining fractions of counties (fracturing county boundaries). For detailed history of this situation in Mississippi, see *Connor v. Waller,* 396 F.Supp. 1314, 1315.

In deference to this undisputed, well defined state policy, to which the voter is thoroughly accustomed, this Court previously has adhered to the principle that in the reapportionment of legislative seats it would not combine subdivisions of different counties; we would not fracture county boundaries. Indeed, such fractionalization, carried very far, would seriously disrupt (and impair) the *basic fabric* of Mississippi state government.

There is a practical consideration about fractionalizing counties which, so far, the Supreme Court does not seem to have addressed. If a Beat or a precinct in one county is detached for annexation to another county for the election of a Senator or a Representative, the voter residing in the detached area can certainly vote but the vote from a detached area having a small percentage of the total vote, will have very little weight against the "majority bastion" in the other county, certainly so if the interests of the Balkanized area do not coincide with those of the mass to which it has been attached. Independently of the mathematics demonstrated by mere numbers, dilution of voting strength would, in fact, occur.

The public policy of this State, expressly and repeatedly recognized by state constitutions and statutes, has been to allow multiple member legislative districts, avoiding the fractionalization of counties.

By the use of *multiple member districts,* without fracturing county boundaries, the Mississippi Legislature could be apportioned in a manner which would comply with one man-one vote principles. We are well aware that the Supreme Court has never yet directed any court to fractionalize counties or to fracture county lines. In *Mahan* the right to preserve the integrity of county boundaries was recognized. Yet, we have repeatedly been told that in the formulation of a court ordered legislative reapportionment plan single member districts must be used unless multiple member districts can be justified by unusual circumstances, *Chapman v. Meier, supra.*

There comes a time when stability, the prime requisite of effective government, should be attained. We have decided to divide the State into single member legislative districts in the hope that this long-running controversy may at last be terminated and the stability of the Mississippi Legislature restored.

We do not believe, however, that the Supreme Court intends that we should tear state policies to shreds. Both *Mahan* and *Chapman* abound with declarations to the contrary. What we propose to do is to set up single member districts, at the same time preserving as much as possible of the spirit of the rule against breaking counties apart. The policy of having multiple member districts will, of course, have to be ignored.

### III. *The Means of Accomplishing the Task*

Mississippi is divided into 82 counties, 410 Beats, and about 1750 voting precincts. It is not a populous State. A deviation of 1% in the population norm for the election of a Representative involves only 181 persons. In the Senate 1% amounts to only 426 persons. If we were to ignore the special circumstances of the case and if percentages were allowed to serve as the sole criteria, we are not left much breathing room in undertaking the conversion of a 159 year old system into single member districts. We cannot change the county lines ordained by law. We have not the machinery with which to realign Beat boundaries. We cannot undertake the reconstitution of voting precincts. A statewide re-registration of voters on newly begun permanent registration rolls would be a task to stagger the most resolute. In short, we have had to take the Counties, Beats, and precincts as they actually are—not what we should prefer if we had been handling these matters for the past century and a half. The special circumstances are further complicated by the fact that the Beats in many Counties have been reapportioned since the Census of 1970, so the figures for that year no longer accurately reflect the facts. In such instances, we have recomputed population

figures, as of 1970, by the most accurate means available.

We have sought to avoid a reapportionment which would spawn a labyrinthian mishmash of legislative districts, composed of hundreds of Balkanized areas scattered profusely throughout the State. We have sought to avoid reducing the legislative elective process to a hopeless jungle, impairing the meaningful nature of the representational function. This has necessitated greater variances in population percentages in some instances than ordinarily would have been preferred.

Of course, we realize the whole job will be to do over again in light of the 1980 figures and the Court hopes that the reapportionment we are now ordering will provide the foundation for smaller variations when the new figures are known.

### THE PLANS

■ The plaintiffs have proposed two reapportionment plans. One is known as the Valinsky Plan. It has been of no practical use because it is constructed chiefly on population data found in Census Enumeration Districts. These Census Districts do not conform to voting precinct or beat boundaries. Their use would require a massive realignment of voting precincts throughout the State, with consequent re-registration of voters. The Court thinks it should adopt an alternative which would avoid this wholesale confusion, to say nothing of the problem of getting the voters to register anew in the appropriate precinct.

On the other hand, we have adopted portions of the Kirksey Plan because, in the opinion of the Court, they fit the situation better than any others. We have not adopted the Kirksey Plan *in toto* because its efforts to attain mathematical nicety would irreparably rend the basic fabric of state government in Mississippi.

The plans we now formulate will conform as nearly as possible to the basic concepts of one man-one vote without, at the same time, setting up a veritable Babel of ill defined legislative districts.

### THE GUIDELINES

To attain this objective we have developed, and adhere to, the following guidelines:

1. If a county has more than enough population for the election of a Representative or Senator, then there shall be one complete district within that county, thus at least one Senator or Representative will be chosen solely by that county. In practical effect this will largely preserve the integrity of county boundaries and conform, to a degree, with the state policy on that subject, *Mahan v. Howell, supra.*

2. Except where two or more districts may properly be set up *within* the same county as authorized by Mississippi Constitution, Section 254, no county will be split into more than two segments.

3. Any departure from these guidelines will be allowed to occur in those rare instances required to attain reasonable contiguity, a tolerable equality of population, or an acceptable degree of compactness.

4. There shall be no minimization or cancellation of black voting strength. Any apparent dilution in any particular locality will occur only when dictated by the necessity for drawing district lines so as to adhere as closely as reasonably possible to the population norm while maintaining contiguity and a reasonable degree of compactness.

5. The population variances are to be as near *de minimis* as possible, bearing in mind any existing unusual circumstances and the narrow mathematical restrictions imposed by a single percentage point.

6. Obviously, shifts could be made in some districts to make them more nearly *de minimis* but the bulge here, or the contraction there, cannot overlook the necessity for fitting one set of 52 blocks (Senate seats) and another set of 122 blocks (House seats) within immovable precinct, beat, county, and state boundaries. Nowhere can a "domino" effect be more quickly encountered.

7. The population figures of the 1970 Census will be used as the basis for this reapportionment. This is the only definite

data available. Yet, the Court is well aware of the continuing population shifts in Mississippi. The Census Bureau officially estimates that between 1970 and July 1, 1973 (the latter date being now more than three years past), the population of DeSoto County increased 28.9%, both Jackson and Rankin Counties increased 18.1%, and so forth. (See Table for the entire State attached to this opinion). We cannot use the 1973 official population estimates because they do not include beats and precincts.

IV. *Judgment*

It, therefore, is ORDERED, ADJUDGED, and DECREED:

1. The permanent plans for the reapportionment of the Legislature of the State of Mississippi, as hereinafter set forth, *shall be in force and effect for the regular quadrennial elections of 1979* and thereafter until altered according to law.

2. Except in those instances in which a special election may hereinafter be ordered, these plans shall not affect the terms of office of legislators elected in 1975.

3. In the event of the death or resignation of a legislator presently in office, the vacancy so created shall be filled by a special election in that district promulgated for 1979 in which the legislator shall have resided at the time of such death or resignation.

4. The removal by a legislator of his residence from one place to another within the district for which he was elected in 1975 shall not affect the term of office for which he was elected.

It is further ORDERED, ADJUDGED, and DECREED that the 52 members of the Mississippi State Senate to be chosen in the quadrennial election year of 1979 shall be elected from districts consisting of specified counties, beats, and precincts, as follows:

SENATE DISTRICTS

| District Number | Description | Population | Over or under the population norm |
|---|---|---|---|
| 1 | DeSoto County; Marshall County: Beat 3 | 40,697 | - 4.5 |
| 2 | Lafayette County; Marshall County: Beats 1, 2, 4, and 5 | 43,396 | + 1.8 |
| 3 | The Counties of Benton, Pontotoc, and Union | 43,964 | + 3.1 |
| 4 | The Counties of Alcorn and Tippah | 43,031 | + 0.9 |
| 5 | The Counties of Prentiss and Tishomingo; Itawamba County: Beats 1 and 2 | 41,811 | - 1.9 |

| District Number | Description | Population | Over or under the population norm |
|---|---|---|---|
| 6 | Lee County | 46,148 | + 8.2 |
| 7 | Monroe County; Itawamba County: Beats 3, 4, and 5 | 44,152 | + 3.6 |
| 8 | Lowndes County: less Air Base Precinct | 44,312 | + 4.0 |
| 9 | The Counties of Chickasaw and Clay; Lowndes County: Air Base Precinct | 41,033 | − 3.7 |
| 10 | The Counties of Choctaw, Montgomery, and Webster; Calhoun County: Beats 1, 2, 4, and 5 | 43,215 | + 1.4 |
| 11 | The Counties of Panola and Yalobusha; Calhoun County: Beat 3 | 41,557 | − 2.5 |
| 12 | The Counties of Tate and Tunica; Quitman County: Beats 1, 2, 3, and 5 | 43,171 | + 1.3 |
| 13 | Coahoma County; Quitman County: Beat 4 | 43,562 | + 2.2 |
| 14 | Bolivar County: except the Precincts of Shelby and Duncan-Alligator | 43,496 | + 2.0 |
| 15 | Sunflower County; Bolivar County: the Precincts of Shelby and Duncan-Alligator | 42,960 | + 0.8 |
| 16 | Washington County: Beats 1, 3, and 4 | 42,553 | − 0.2 |

| District Number | Description | Population | Over or under the population norm |
|---|---|---|---|
| 17 | Humphreys County; | | |
| | Washington County: Beats 2 and 5 | 42,629 | .0 |
| 18 | Leflore County | 42,111 | – 1.2 |
| 19 | The Counties of Grenada and Tallahatchie | 39,192 | – 8.1 |
| 20 | The Counties of Carroll and Leake; | | |
| | Attala County: Beats 1, 2, 3, and 4 | 42,138 | – 1.2 |
| 21 | The Counties of Neshoba and Winston; | | |
| | Attala County: Beat 5 | 43,122 | + 1.1 |
| 22 | The Counties of Noxubee and Oktibbeha | 43,040 | + 1.0 |
| 23 | Kemper County; | | |
| | Lauderdale County: Beats 1 and 3 | 39,422 | – 7.5 |
| 24 | Clarke County: Beat 4 | | |
| | Lauderdale County: Beats 2, 4, and 5 | 40,858 | – 4.2 |
| 25 | The Counties of Jasper and Smith; | | |
| | Clarke County: Beats 1, 2, 3, and 5 | 41,644 | – 2.3 |
| 26 | The Counties of Newton and Scott | 40,352 | – 5.4 |
| 27 | Rankin County | 43,933 | + 3.0 |

▮▮▮▮▮▮▮▮▮▮

| District Number | Description | Population | Over or under the population norm |
|---|---|---|---|
| 28 | Madison County; | | |
| | Holmes County: Beats 2 and 3 | | |
| | Yazoo County: Beats 2 and 4 | 45,612 | + 7.0 |
| 29 | The Counties of Issaquena and Sharkey; | | |
| | Holmes County: Beats 1, 4, and 5 | | |
| | Yazoo County: Beats 1, 3, and 5 | 46,223 | + 8.4 |
| 30 | Warren County | 44,981 | + 5.5 |
| 31 | Hinds County: Beat 1 | 42,948 | + .7 |
| 32 | Hinds County: Beat 2 | 43,061 | + 1.0 |
| 33 | Hinds County: Beat 3 | 43,199 | + 1.3 |
| 34 | Hinds County: Beat 4 | 43,010 | + 0.9 |
| 35 | Hinds County: Beat 5 | 42,755 | + 0.3 |
| 36 | Simpson County; | | |
| | Copiah County: Beats 1, 2, 4, and 5 | 39,747 | - 6.8 |
| 37 | The Counties of Claiborne and Lincoln; | | |
| | Copiah County: Beat 3 | 41,233 | - 3.3 |
| 38 | Jefferson County; | | |
| | Adams County: Beats 1, 2, 4, and 5 | 39,082 | - 8.3 |
| 39 | The Counties of Amite, Franklin, and Wilkinson; | | |
| | Adams County: Beat 3 | 40,379 | - 5.3 |

| District Number | Description | Population | Over or under the population norm |
|---|---|---|---|
| 40 | Pike County; | | |
| | Walthall County: Beats 1, 2, and 3 | 40,190 | – 5.5 |
| 41 | The Counties of Lawrence and Marion; | | |
| | Jefferson Davis County: Beat 2 | | |
| | Walthall County: Beats 4 and 5 | 34,486 | – 7.4 |
| 42 | Covington County; | | |
| | Jefferson Davis County: Beats 1, 3, 4, and 5 | | |
| | Jones County: Beat 5, and the Precincts of County Barn and Ellis- ville Courthouse | 40,794 | – 4.3 |
| 43 | Jones County: Beats 1, 2, 3, and 4, less the Precincts of County Barn and Ellisville Courthouse | 40,989 | – 3.9 |
| 44 | Forrest County: Beats 1, 2, and 3; the Precincts of Camp School, Dixie Pine, Hawkins Junior High, Rowan High, William Carey, and McCallum | 42,339 | – 0.7 |
| 45 | The Counties of Lamar and Perry; | | |
| | Forrest County: Beat 5 and the Precincts of County A.H.S. and Mc- Laurin | | |
| | Stone County: Beats 1 and 2 | 43,024 | + 0.9 |
| 46 | The Counties of George, Greene, and Wayne; | | |
| | Stone County: Beats 3, 4, and 5 | 42,515 | – 0.3 |

| District Number | Description | Population | Over or under the population norm |
|---|---|---|---|
| 47 | The Counties of Hancock and Pearl River | 45,189 | + 6.0 |
| 48 | Harrison County: the City of Gulfport and Precinct 11 in the City of Biloxi | 45,208 | + 6.0 |
| 49 | Harrison County: all of the City of Biloxi except Precinct 11 | 44,069 | + 3.4 |
| 50 | Harrison County: all that part outside the Cities of Biloxi and Gulfport | 45,305 | + 6.3 |
| 51 | Jackson County: all that part outside the Cities of Moss Point and Pascagoula plus the Precinct of Bayou Casotte No. 4 | 44,269 | + 3.8 |
| 52 | Jackson County: the City of Moss Point; all of the City of Pascagoula except the Precinct of Bayou Casotte No. 4 | 43,706 | + 2.5 |

That which appears herein shall constitute the findings of fact and conclusions of law in this case as required by Rule 52(a) of the Federal Rules of Civil Procedure and shall also constitute the judgment of the Court as to the reapportionment of the Mississippi State Senate. This, however, is not a final judgment in this case because the House of Representatives must also be reapportioned so as to comply with the Constitution of the United States. The reapportionment of the House of Representatives will be accomplished in a supplemental decree, to be entered as quickly as the Court can devise a satisfactory plan for the reapportionment of the House of Representatives, continuing jurisdiction of this case being expressly reserved for that purpose.

The parties to this litigation are directed, within fifteen (15) days, to file stipulations with the Court as to those Senatorial Districts in which special elections would be mandated, in their opinion, by the Constitution of the United States.

Appendix to follow.

APPENDIX

LARGE FIGURES - DISTRICT NUMBERS

SMALL FIGURES - BEAT NUMBERS

BEAT AND PRECINCT LINES
NOT DRAWN TO SCALE

REAPPORTIONMENT OF THE

# MISSISSIPPI STATE

## SENATE

INTO SINGLE-MEMBER DISTRICTS

1976

Population Analysis for the 52 Senatorial Districts
1976 Court Ordered Plan

| Dist. No. | Counties and Beats | Population County | Population District | Over or Under State Norm of 42,633 Amount | Over or Under State Norm of 42,633 % |
|---|---|---|---|---|---|
| 1 | DeSoto-All | 35,885 | | | |
| | Marshall-Beat 3 | 4,812 | 40,697 | 1,936- | 4.5- |
| 2 | Lafayette-All | 24,181 | | | |
| | Marshall-Beats 1, 2, 4 & 5 | 19,215 | 43,396 | 763+ | 1.8+ |
| 3 | Union-All | 19,096 | | | |
| | Pontotoc-All | 17,363 | | | |
| | Benton-All | 7,505 | 43,964 | 1,331+ | 3.1+ |
| 4 | Alcorn-All | 27,179 | | | |
| | Tippah-All | 15,852 | 43,031 | 398+ | .9+ |
| 5 | Prentiss-All | 20,133 | | | |
| | Tishomingo-All | 14,940 | | | |
| | Itawamba-Beats 1 & 2 | 6,738 | 41,811 | 822- | 1.9- |
| 6 | Lee-All | 46,148 | 46,148 | 3,515+ | 8.2+ |
| 7 | Monroe-All | 34,043 | | | |
| | Itawamba-Beats 3, 4 & 5 | 10,109 | 44,152 | 1,519+ | 3.6+ |
| 8 | Lowndes County, all except Air Base Precinct | 44,312 | 44,312 | 1,679+ | 4.0+ |
| 9 | Clay-All | 18,840 | | | |
| | Chickasaw-All | 16,805 | | | |
| | Lowndes-Air Base Precinct | 5,388 | 41,033 | 1,600- | 3.7- |
| 10 | Choctaw-All | 8,440 | | | |
| | Montgomery-All | 12,918 | | | |
| | Webster-All | 10,047 | | | |
| | Calhoun-Beats 1, 2, 4 & 5 | 11,810 | 43,215 | 582+ | 1.4+ |
| 11 | Panola-All | 26,829 | | | |
| | Yalobusha-All | 11,915 | | | |
| | Calhoun-Beat 3 | 2,813 | 41,557 | 1,076- | 2.5- |
| 12 | Tate-All | 18,544 | | | |
| | Tunica-All | 11,854 | | | |
| | Quitman-Beats 1, 2, 3 & 5 | 12,773 | 43,171 | 538+ | 1.3+ |

PLAN FOR THE REAPPORTIONMENT OF THE MISSISSIPPI STATE SENATE
AUGUST 1976

| Dist. No. | Counties and Beats | Population County | Population District | Amount | % |
|---|---|---|---|---|---|
| 13 | Coahoma-All | 40,447 | 43,562 | 929+ | 2.2+ |
| | Quitman-Beat 4 | 3,115 | | | |
| 14 | Bolivar-Beats 1, 2, 4 & 5 | 39,767 | 43,496 | 863+ | 2.0+ |
| | Beat 3: Mound Bayou Precinct | 3,729 | | | |
| 15 | Sunflower-All | 37,047 | | | |
| | Bolivar-Beat 3: Shelby & Duncan-Alligator Precincts | 5,913 | 42,960 | 327+ | .8+ |
| 16 | Washington-All of Beats 1, 3 & 4 | 42,553 | 42,553 | 80- | .2- |
| 17 | Washington-All of Beats 2 & 5 | 28,028 | 42,629 | 4- | .0- |
| | Humphreys-All | 14,601 | | | |
| 18 | Leflore-All | 42,111 | 42,111 | 522- | 1.2- |
| 19 | Grenada-All | 19,854 | | | |
| | Tallahatchie-All | 19,338 | 39,192 | 3,441- | 8.1- |
| 20 | Leake-All | 17,085 | | | |
| | Attala-Beats 1, 2, 3 & 4 | 15,656 | | | |
| | Carroll-All | 9,397 | 42,138 | 495- | 1.2- |

PLAN FOR THE REAPPORTIONMENT OF THE MISSISSIPPI STATE SENATE – Cont'd
AUGUST 1976

| Dist. No. | Counties and Beats | Population County | District | Over or Under State Norm of 42,633 Amount | % |
|-----------|--------------------|------------------|----------|-------------------------------------------|---|
| 21 | Neshoba–All | 20,802 | | | |
|    | Winston–All | 18,406 | | | |
|    | Attala–Beat 5 | 3,914 | 43,122 | 489+ | 1.1+ |
| 22 | Oktibbeha–All | 28,752 | | | |
|    | Noxubee–All | 14,288 | 43,040 | 407+ | 1.0+ |
| 23 | Lauderdale–Beats 1 & 3 | 29,189 | | | |
|    | Kemper–All | 10,233 | 39,422 | 3,211– | 7.5– |
| 24 | Lauderdale–Beats 2, 4 & 5 | 37,898 | | | |
|    | Clarke–Beat 4 | 2,960 | 40,858 | 1,775– | 4.2– |
| 25 | Jasper–All | 15,994 | | | |
|    | Smith–All | 13,561 | | | |
|    | Clarke–Beats 1, 2, 3 & 5 | 12,089 | 41,644 | 989– | 2.3– |
| 26 | Scott–All | 21,369 | | | |
|    | Newton–All | 18,983 | 40,352 | 2,281– | 5.4– |
| 27 | Rankin–All | 43,933 | 43,933 | 1,300+ | 3.0+ |
| 28 | Madison–All | 29,737 | | | |
|    | Holmes–Beats 2 & 3 | 10,110 | | | |
|    | Yazoo–Beats 2 & 4 | 5,765 | 45,612 | 2,979+ | 7.0+ |
| 29 | Yazoo–Beats 1, 3 & 5 | 21,539 | | | |
|    | Holmes–Beats 1, 4 & 5 | 13,010 | | | |
|    | Sharkey–All | 8,937 | | | |
|    | Issaquena–All | 2,737 | 46,223 | 3,590+ | 8.4+ |
| 30 | Warren–All | 44,981 | 44,981 | 2,348+ | 5.5+ |
| 31 | Hinds–Beat 1 | 42,948 | 42,948 | 313+ | .7+ |
| 32 | Hinds–Beat 2 | 43,061 | 43,061 | 428+ | 1.0+ |
| 33 | Hinds–Beat 3 | 43,199 | 43,199 | 566+ | 1.3+ |
| 34 | Hinds–Beat 4 | 43,010 | 43,010 | 377+ | .9+ |
| 35 | Hinds–Beat 5 | 42,755 | 42,755 | 122+ | .3+ |
| 36 | Simpson–All | 19,947 | | | |
|    | Copiah–Beats 1, 2, 4 & 5 | 19,800 | 39,747 | 2,886– | 6.8– |
| 37 | Lincoln–All | 26,198 | | | |
|    | Claiborne–All | 10,086 | | | |
|    | Copiah–Beat 3 | 4,949 | 41,233 | 1,400– | 3.3– |
| 38 | Adams–Beats 1, 2, 4 & 5 | 29,787 | | | |
|    | Jefferson–All | 9,295 | 39,082 | 3,551– | 8.3– |
| 39 | Amite–All | 13,763 | | | |
|    | Wilkinson–All | 11,099 | | | |
|    | Franklin–All | 8,011 | | | |
|    | Adams–Beat 3 | 7,506 | 40,379 | 2,254– | 5.3– |
| 40 | Pike–All | 31,756 | | | |
|    | Walthall–Beats 1, 2 & 3 | 8,534 | 40,290 | 2,343– | 5.5– |
| 41 | Marion–All | 22,871 | | | |
|    | Lawrence–All | 11,137 | | | |
|    | Walthall–Beats 4 & 5 | 3,966 | | | |
|    | Jefferson Davis–Beat 2 | 1,512 | 39,486 | 3,147– | 7.4– |

PLAN FOR THE REAPPORTIONMENT OF THE MISSISSIPPI STATE SENATE – Cont'd
AUGUST 1976

| Dist. No. | Counties and Beats | Population County | Population District | Over or Under State Norm of 42,633 Amount | % |
|---|---|---|---|---|---|
| 42 | Jones-Beat 5 (11,272) plus Ellisville Courthouse & County Barn Precincts in Beat 4 (4,096) | 15,368 | | | |
| | Covington-All | 14,002 | | | |
| | Jefferson Davis- Beats 1, 3, 4 & 5 | 11,424 | 40,794 | 1,839- | 4.3- |
| 43 | Jones-Beats 1, 2, 3 & 4 less Ellisville Courthouse & County Barn Precincts | 40,989 | 40,989 | 1,644- | 3.9- |
| 44 | Forrest-All of Beats 1, 2 & 3 and Camp School, Dixie Pine, Hawkins Junior High, Rowan High, William Carey & McCallum Precincts in Beat 4 | 42,339 | 42,339 | 294- | .7- |
| 45 | Forrest-All of Beat 5 and Forrest County A.H.S. and McLaurin Precincts in Beat 4 | 15,510 | | | |
| | Lamar-All | 15,209 | | | |
| | Perry-All | 9,065 | | | |
| | Stone-All of Beats 1 & 2 | 3,240 | 43,024 | 391+ | .9+ |
| 46 | Wayne-All | 16,650 | | | |
| | George-All | 12,459 | | | |
| | Greene-All | 8,545 | | | |
| | Stone-All of Beats 3, 4 & 5 | 4,861 | 42,515 | 118- | .3- |
| 47 | Pearl River-All | 27,802 | | | |
| | Hancock-All | 17,387 | 45,189 | 2,556+ | 6.0+ |
| 48 | Harrison-City of Gulfport, & Precinct 11 in | 40,791 | | | |
| | City of Biloxi | 4,417 | 45,208 | 2,575+ | 6.0+ |
| 49 | Harrison-City of Biloxi: All except that part included in District 48 | 44,069 | 44,069 | 1,436+ | 3.4+ |
| 50 | Harrison-All that part lying outside Cities of Biloxi and Gulfport | 45,305 | 45,305 | 2,672+ | 6.3+ |
| 51 | Jackson-All that part lying outside Cities of Moss Point and Pascagoula plus Bayou Casotte No. 4 Precinct in City of Pascagoula | 44,269 | 44,269 | 1,636+ | 3.8+ |
| 52 | Jackson-The City of Moss Point and the City of Pascagoula, less Bayou Casotte No. 4 Precinct | 43,706 | 43,706 | 1,073+ | 2.5+ |
| | TOTALS | 2,216,912 | 2,216,912 | | |

The U. S. Census Bureau does not report population by voting precincts, as it once did. The Court, therefore, has estimated precinct population by factoring the registered voting strength of a precinct against the total population of the Beat in which it is located. Extensive comparison indicates that the precinct population figures thus obtained are substantially accurate.

The Beats in some Counties have been redistricted since 1970. The population figures used for those Beats have generally been taken from the Court orders specifying the population figures.

Three Counties—Hinds, Warren, and Grenada are in the process of having their Beats redistricted. Hinds and Warren are on appeal. As to them we have used the population figures as found by the District Court. Legislative redistricting as to Lowndes County presented a special problem. Beats in Lowndes were redistricted in 1972. There, the District Court found that 4,074 non-residents were enumerated at Columbus Air Force Base in 1970, while 1,670 non-residents were enumerated at Mississippi University for Women. It reapportioned the five Beats on the basis of a population of 43,956. We have reapportioned on the basis of the total population enumerated by the Census Bureau (49,700).

RACIAL COMPOSITION OF THE VARIOUS SENATORIAL DISTRICTS

| District Number | Black Population | District Number | Black Population |
|---|---|---|---|
| 1 | 38.1% | 21 | 28.4% |
| 2 | 43.1% | 22 | 45.1% |
| 3 | 20.9% | 23 | 29.4% |
| 4 | 13.4% | 24 | 37.7% |
| 5 | 7.4% | 25 | 35.9% |
| 6 | 20.7% | 26 | 30.3% |
| 7 | 25.5% | 27 | 28.1% |
| 8 | 26 % | 28 | 62 % |
| 9 | 41.5% | 29 | 60.8% |
| 10 | 31.7% | 30 | 40.8% |
| 11 | 46 % | 31 | 39 % |
| 12 | 57.2% | 32 | 54.3% |
| 13 | 64 % | 33 | 51.2% |
| 14 | 58.9% | 34 | 28.2% |
| 15 | 65.1% | 35 | 22.8% |
| 16 | 57 % | 36 | 39.7% |
| 17 | 57 % | 37 | 43.9% |
| 18 | 57.9% | 38 | 54 % |
| 19 | 51.9% | 39 | 52.7% |
| 20 | .42.2% | 40 | 42.6% |

| District Number | Black Population |
|---|---|
| 41 | 33.8% |
| 42 | 28.3% |
| 43 | 30.8% |
| 44 | No figures |
| 45 | No figures |
| 46 | 24 % |
| 47 | 16.7% |
| 48 | 23.6% |
| 49 | 18.5% |
| 50 | 8.7% |
| 51 | 12.3% |
| 52 | 20.1% |

Mississippi Population Changes, By County,
Since the Census of 1970
(U. S. Census Official Estimate)

| COUNTY | |
|---|---|
| Adams | +0.9 |
| Alcorn | +3.7 |
| Amite | -4.8 |
| Attala | +0.3 |
| Benton | -1.3 |
| Bolivar | +0.1 |
| Calhoun | +3.0 |
| Carroll | -0.4 |
| Chickasaw | +2.4 |
| Choctaw | +0.7 |
| Claiborne | +0.3 |
| Clarke | +2.4 |
| Clay | +1.6 |
| Coahoma | -4.2 |
| Copiah | +4.5 |
| Covington | +2.7 |
| DeSoto | +28.9 |
| Forrest | +6.9 |
| Franklin | -0.3 |
| George | +6.1 |
| Greene | -0.4 |
| Grenada | +1.0 |
| Hancock | +5.5 |
| Harrison | +8.3 |
| Hinds | +3.8 |
| Holmes | -2.7 |
| Humphreys | -3.4 |
| Issaquena | -12.2 |
| Itawamba | +5.6 |
| Jackson | +18.1 |
| Jasper | +0.8 |
| Jefferson | -5.3 |
| Jefferson Davis | -0.1 |
| Jones | +0.7 |
| Kemper | -0.6 |
| Lafayette | +11.1 |
| Lamar | +11.3 |
| Lauderdale | +6.3 |
| Lawrence | +2.6 |
| Leake | +2.3 |
| Lee | +5.9 |
| Leflore | -1.5 |
| Lincoln | +2.7 |
| Lowndes | +7.6 |
| Madison | +7.3 |
| Marion | +2.8 |
| Marshall | +11.4 |
| Monroe | +2.3 |
| Montgomery | +2.5 |
| Neshoba | +4.2 |
| Newton | +2.6 |
| Noxubee | -4.1 |
| Oktibbeha | +6.9 |

| COUNTY | |
|---|---|
| Panola | +2.4 |
| Pearl River | −0.1 |
| Perry | +3.4 |
| Pike | +4.6 |
| Pontotoc | +5.6 |
| Prentiss | +2.8 |
| Quitman | −4.4 |
| Rankin | +18.1 |
| Scott | +4.3 |
| Sharkey | −3.7 |
| Simpson | +4.3 |
| Smith | +6.2 |
| Stone | +5.4 |
| Sunflower | −0.7 |
| Tallahatchie | −3.8 |
| Tate | +9.6 |
| Tippah | +8.9 |
| Tishomingo | +6.3 |
| Tunica | −5.4 |
| Union | +6.7 |
| Walthall | −0.8 |
| Warren | +2.4 |
| Washington | +0.8 |
| Wayne | +1.9 |
| Webster | +0.9 |
| Wilkinson | −3.5 |
| Winston | +3.1 |
| Yalobusha | +4.0 |
| Yazoo | −3.0 |