Barbara **COHEN, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

The **WEST HAVEN BOARD OF POLICE COMMISSIONERS et al., Defendants.**

Civ. No. N–78–18.

United States District Court, D. Connecticut.

Feb. 29, 1980.

Joseph D. Garrison, Garrison, Kahn, Weis, Crane & Silbert, New Haven, Conn., for plaintiffs.

Charles H. Fischer, Jr., Corp. Counsel, City of West Haven, West Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

On January 13, 1978, the plaintiff, Barbara Cohen, commenced this civil rights action for declaratory, injunctive and monetary relief to redress injuries to herself and others similarly situated caused by the alleged discriminatory policies and practices in the appointment of women as police officers in the City of West Haven. Named as defendants are the Board of Police Commissioners, Mayor, and various other officials of the City. The suit was brought pursuant to the provisions of 42 U.S.C. § 1983 and the Revenue Sharing Act, 31 U.S.C. § 1221 et seq.; jurisdiction is founded under 28 U.S.C. §§ 1331, 1343 and 31 U.S.C. § 1244.

## I

In the fall of 1976, Ms. Cohen applied for a position as a police officer in the West Haven Police Department. Under the rules of the Department, an applicant is required to pass written and oral examinations, a physical fitness test, a polygraph test and a physical examination. Thereafter, the successful candidates are placed on an appointment list according to their scores on the written and oral examinations. Although the physical agility test is given a numerical grade based on performance, it is merely a pass-fail examination. Those on the final list are appointed to the police force pursuant to the City Charter's hiring provisions.

On January 17, 1977, Ms. Cohen was notified that she had passed the written and oral examinations with a composite score of 82.14. Two weeks later, she took the physical fitness test and scored only 294 out of a possible 1000, which was a failing grade and disqualified her for appointment. Her inability to complete the test successfully was complicated by the fact that during one of the exercises, Ms. Cohen fell and fractured her ankle. Rather than reapply for an appointment to the Department and retake the necessary examinations, this suit was instituted.

During the month of March 1978, this Court conducted a five-day hearing on plaintiff's application for a preliminary injunction. It is important to point out that the evidence of the parties primarily addressed the plaintiff's contention that the defendants' physical fitness test, which had never been validated, was sexually biased against women and not job related. The relief sought was "a decree enjoining further use of the physical test . . . and an order mandating that the defendants begin in good faith to implement affirmative action requirements by recruiting and hiring women." In addition, the plaintiff requested that the Court order her immediate appointment to the police department if she was found by the Court to be "qualified physically" for the position. *Plaintiff's Trial Brief* at 30–31.

In the event the discriminatory nature of the test was proven, the plaintiff expressly recommended that all remaining issues, including attorneys' fees and back pay, be left open so that the parties would have an opportunity to negotiate a settlement. *Id.* at 36.

On her direct case, the plaintiff relied heavily on "statistical" evidence to establish a prima facie case that the physical fitness examination had a disparate impact upon women. See, e. g., *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Bridgeport Guardians, Inc. v. Bridgeport Civil Service Commission*, 482 F.2d 1333 (2 Cir. 1973) cert. denied, 421 U.S. 991, 95 S.Ct. 1997, 44 L.Ed.2d 481 (1975). On their part, the defendants introduced evidence to demonstrate that the officials of the City had no prejudice against women, that they believed women had a legitimate and beneficial role in police work, and that they have been actively recruiting females as police officers.

With respect to the physical fitness examination, the testimony revealed that the City was utilizing the so-called "Blesh Test" in the selection process for the appointment of police officers. This test was designed and personally administered by Dr. T. Erwin Blesh, the Director of Physical Education at Yale University and an expert in the field of male and female physical agility training and testing. Dr. Blesh testified that he structured the test many years ago, that it was widely used by cities and towns in Connecticut as one of the qualifying tests for firemen and policemen, and that although very few women ever passed it, he considered it job related.

To counter the testimony of Dr. Blesh, the plaintiff relied on studies performed by Dr. Paul Lessack and Dr. Thomas Manfredi, both experts in the fields of physical education and exercise science. The rebuttal testimony established that, while many features of the Blesh Test were unassailable, several aspects of the testing procedures

had almost a total adverse impact upon women applicants. These experts recommended that the Blesh Test be modified and that certain alternative testing components replace the offending ones.

At the conclusion of the hearings, the Court ruled that the Blesh Test as presently constituted was sexually discriminatory, that the defendants had failed to show the validity or job relatedness of the test, and that the defendants had not established that the discrimination inherent in the test bore a demonstrable relationship to the successful performance of a police officer's job. See, e. g., *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2726, 53 L.Ed.2d 786 (1977). *International Brotherhood of Teamsters v. United States*, supra; *Albemarle Paper Co. v. Moody*, supra; *Kirkland v. New York State Department of Correctional Services*, 520 F.2d 420 (2 Cir. 1975); *Schaefer v. Tannian*, 394 F.Supp. 1128 (E.D.Mich.1974). However, the Court declined to order that Ms. Cohen be immediately hired as a police officer until she demonstrated she could pass a non-discriminatory physical fitness test as well as the polygraph and physical examinations.

In accordance with these findings, the Court permitted the plaintiff's suit to proceed as a class action and ordered that: 1) the use of the Blesh Test as a criterion for employment as a police officer be enjoined; 2) a new job related physical fitness examination be designed forthwith; 3) plaintiff Cohen and other similarly situated be hired as police officers if they passed the new test and the other unchallenged prerequisites for employment; and 4) the City promptly institute an effective affirmative action program for the selection of women police officers.

Subsequently, with the benefit of suggestions proffered by an impartial panel of three experts, the parties agreed upon a new physical fitness test to be administered to all applicants for appointment to the police department. The new test incorporates many of the components of the Blesh Test, but does eliminate several of the prior testing features which studies and surveys demonstrated had an adverse effect when applied to females.

Upon review of the elements of the new examination, the Court found them "to be nondiscriminatory and a reasonable measure of minimal fitness required to do the job of police officer in the City of West Haven." Unfortunately, neither plaintiff Cohen nor a member of her class, Jocelyn Horwitt, was able to pass the revised agility examination. Each is now employed in other business pursuits.

While the parties reached an amicable agreement concerning the physical fitness test to be administered by the City, they were unable to resolve the remaining issues raised by plaintiff's motions for 1) an order setting forth the terms and conditions of an affirmative action program for the City; 2) an allowance of attorneys' fees and costs; and 3) an award of back pay for Ms. Cohen and Ms. Horwitt. Oral arguments on these motions having been heard, the matters are now ripe for decision.

## II

■ The application for an order with respect to an affirmative action program is, for all practical purposes, moot. Following oral argument on the motion, the Court issued a rather broad order which, *inter alia*, enjoined the City from engaging in any discriminatory act in the selection of women as police officers, directed that an eligible female be employed in the police department, prescribed a recruitment program for qualified and interested women, and retained jurisdiction for this Court's continued supervision over the City's efforts to hire women as police officers.

## III

■ The attorneys for the plaintiff and her class have clearly established entitlement to fees under § 124(e) of the Revenue Sharing Act, 31 U.S.C. § 1244(e), which provides in relevant part:

In any action under this section to enforce section 1242(a) of this title, the court, in its discretion, may allow to the

prevailing party, other than the United States, reasonable attorney fees . . .

There is no question that the plaintiff was "the prevailing party" within the meaning of the statute, *Gagne v. Maher*, 594 F.2d 336, 340 (2 Cir. 1979), cert. granted, —— U.S. ——, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979), and that she succeeded on most of the major issues raised in the lawsuit, *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1 Cir. 1978).

Significant employment goals for women were advanced by plaintiff's lawsuit. A long-standing, sex biased physical fitness test utilized by the City as part of the qualifying procedures for the appointment of police officers was revised making it a sexually neutral examination. The consequences of her successful efforts have had more than a localized influence; numerous surrounding cities and towns have now voluntarily abandoned the Blesh Test and replaced it with the new examination established for the City of West Haven. Costly and time-consuming litigation has been and will be avoided by the precedent established in this District by plaintiff's action. In addition, the gains derived from the viable affirmative action program obtained by the plaintiff will undoubtedly foster a substantial increase in the hiring of females in the City's police department. While the plaintiff and her class did not accomplish each and every objective of the action instituted by her, the overall result will unquestionably redress serious disparate employment practices for those who wish to serve in the community as police officers. See *United States v. Board of Education*, 605 F.2d 573, 576 (2 Cir. 1979); *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4 Cir.), cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971).

While counsel's eligibility for an award of attorneys' fees is readily apparent, the task of ascertaining the proper amount is difficult at best. Attorney Joseph Garrison, who was lead counsel for the plaintiff and her class, requests a total of $14,840.00 for 185.5 hours devoted to the case at $80 per hour; Attorney Gerald Kahn seeks $1,380.00 for 23 work hours at $60 per hour;

and Attorney Jonathan Silbert has filed for $90.00 representing 1.5 hours of time.

■ In making awards based on the fee petitions, the factors evaluated and placed on the scales by the Court include: 1) time and labor spent; 2) counsels' experience and reputation; 3) the magnitude and complexity of the litigation; 4) the results achieved on behalf of the named plaintiff and the class she represented; 5) the quality of the advocacy; 6) the relative ability of the defendants to pay; and 7) awards in similar cases. See, e. g., *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025 (2 Cir. 1979); *Firebird Society v. Members of Board of Fire Commissioners*, 433 F.Supp. 752 (D.Conn.1976), aff'd 556 F.2d 642 (2 Cir. 1977) (per curiam).

■ Attorney Garrison, an experienced and respected trial lawyer, spent considerable time in preparation and trial of this civil rights case. He and the other members of his firm who participated in the case provided exceptional representation to the plaintiff and her class. In response to the claims for fees, the City contends it cooperated in large measure, after the initial hearings, to resolve by compromise several important issues related to the employment of the plaintiff and members of her class as police officers, and the implementation of an affirmative action program. In addition, it argues that because a municipality is involved and because public funds would be depleted by an award of attorneys' fees, the Court should exercise its discretion with caution and moderation.

After careful review and consideration of the arguments of counsel, the moving papers, and the controlling legal principles, it is the Court's opinion that the following awards strike a fair balance:

1) Attorney Garrison

| | |
|---|---|
| 36.2 hours (in court) at $75 per hour = | $2,715.00 |
| 87.8 hours (research) at $35 per hour = | $3,073.00 |
| 61.5 hours (interviews, conferences) at $20 per hour = | $1,230.00 |
| Total = | $7,018.00 |

2) Attorney Kahn

| | |
|---|---|
| 23 hours (research) at $35 per hour = | $ 805.00 |

3) Attorney Silbert

| | |
|---|---|
| 1.5 hours (research) at $35 per hour = | $ 52.50 |

The total award for attorneys' fees, therefore, is $7,875.50.

■ With respect to the plaintiff's application for allowance of costs, the Court will award reimbursement for the expert witness fees of Dr. Paul Lessack ($2,275.00) and Dr. Thomas Manfredi ($820.00), both of whom played an essential role in the plaintiff's presentation of proof on the issues relating to the sexual bias of the City's physical agility test. *AAMCO Automatic Transmissions, Inc. v. Tayloe*, 82 F.R.D. 405, 409–10 (E.D.Pa.1979); *Welsch v. Likins*, 68 F.R.D. 589, 597 (D.Minn.), aff'd 525 F.2d 987 (8 Cir. 1975) (per curiam). Court costs in the amount of $394.20 are also allowed. However, the request for payment of fees to Dr. Billings, who did not testify at the hearing, is denied. Thus, the total award for costs is $3,489.20.

## V

· As a further consequence of the City's use of a test found to be sexually biased, Ms. Cohen and Ms. Horwitt seek an allowance of back pay from the time they were denied a position as a police officer on the basis of the Blesh Test to the time they failed the revised physical fitness examination.

[6] In the typical employment discrimination case, once discrimination has been shown to exist, there is a presumption that the discriminatee is entitled to back pay. The burden of proof then shifts to the employer to establish that the individual discriminated against would not have been hired absent the discrimination. If this burden is not met, then back pay must be awarded unless special circumstances exist. As explained by the Supreme Court in *Albemarle Paper Co. v. Moody*, supra, 422 U.S. at 421, 95 S.Ct. at 2373:

> [G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

See also *Stewart v. General Motors Corp.*, 542 F.2d 445, 451–52 (7 Cir. 1976), cert. denied, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977); *McCormick v. Attala County Board of Education*, 541 F.2d 1094, 1095. (5 Cir. 1976); *EEOC v. Local 638, Sheet Metal Workers*, 532 F.2d 821, 832 (2 Cir. 1976); *United States v. United States Steel Corp.*, 520 F.2d 1043, 1054–55 (5 Cir. 1975), cert. denied, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).

■ In the instant case, special and cogent reasons are present which justify a denial of the back pay remedy. First, the issues decided by the Court in the preliminary injunction hearing were limited to the unlawful discrimination inherent in the Blesh Test *in general*; the equities of Ms. Cohen's case and other members of the class were left open until a determination was made whether they possessed the physical strength necessary for the performance of police work. Remedial decrees, including back pay awards for individual members of the class, were reserved until there was evidence, on a case by case basis, that a deprivation was suffered by reason of the discrimination found by the Court. In effect, the Court adopted the two-step approach to the trial of class action discrimination cases advanced by the Fifth Circuit in *United States v. United States Steel Corp.*, supra, 520 F.2d at 1052–55. Because both Ms. Cohen and Ms. Horwitt failed to demonstrate their qualifications to be employed as police officers by passing the sexually neutral physical fitness test, a back pay award would grant them a windfall and would be unwarranted. *Id.* at 1055; see also *Hill v. Western Electric Co., Inc.*, 596 F.2d 99, 104 (4 Cir.), cert. denied, —— U.S. ——, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979); *Stewart v. General Motors Corp.*, supra, 542 F.2d at 452.

Second, a back pay award is not necessary to effectuate the goal of deterring the employer from a continuation of the illegal employment practice. See *Albemarle Paper Co. v. Moody*, supra, 422 U.S. at 417–18, 95 S.Ct. at 2371–72. The Blesh Test was

neither designed as nor intended to be a barrier erected to thwart the employment of women as police officers. During the proceedings in this case it was uncontroverted that a physical fitness test was a necessary prerequisite to employment as a police officer. And, as even the plaintiff's experts conceded, the Blesh Test had many job related features, but needed to be updated in the light of the most recent studies relating to the capabilities of females to perform certain arduous and dangerous duties of a police officer. When the deficiencies in the test were revealed, the City promptly cooperated to excise the offending components and to develop a job related, sexually neutral examination. The City's response to the Court's preliminary rulings avoided a plenary trial on the merits and its new test has become the model for most towns and cities in this area. Under these circumstances, the imposition of an economic penalty would serve no useful purpose and would be counterproductive.

Third, while it is settled law that the lack of intent to discriminate is insufficient in and of itself to deny a back pay award, the City's good faith attempts prior to the institution of this lawsuit to hire women and other minorities in all of its agencies and departments, including the police department, open "the door to equity" when appropriate remedies are fashioned for the City's unintentional discriminatory acts. *Albemarle Paper Co. v. Moody,* supra, 422 U.S. at 422, 95 S.Ct. at 2372. In the Court's opinion it would be harsh and inequitable, on balance, to extract monetary redress against the City beyond that which has already been imposed.

Finally, the principles enunciated in *Rodriguez v. Taylor,* 569 F.2d 1231 (3 Cir. 1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), upon which the plaintiffs Cohen and Horwitt so heavily rely, do not control the disposition of the back pay issue in the case *sub judice.* In *Rodriguez,* the plaintiff filed an application for employment with the City of Philadelphia for the position of a security officer. His application was rejected and he was not permitted to take the civil service examina-tion solely on the basis of his age. The district court ruled that the City's actions violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1974), ordered that the plaintiff be administered the competitive test, and awarded him damages which included back pay. On appeal, despite the disclosure that the plaintiff had failed the examination and was, therefore, not qualified to be a security officer, the Third Circuit affirmed the back pay remedy.

The court of appeals emphasized, however, that one of the main reasons for the affirmance was the trial judge's finding, after a full trial on the merits, that the plaintiff was "generally qualified" for the job based on the plaintiff's proof of his mental and physical capabilities and the defendant's failure to present countervailing evidence on the issue. *Id.* at 1240. The court noted that the City's failure to administer the test promptly precluded development of material evidence "until after trial." *Id.*

These factors, crucial to the award of back pay, are absent in the instant case. Although this Court found the Blesh Test to be discriminatory and concluded that injunctive relief was proper, there was an express reservation of issues for future hearings which included the necessity for particular individuals to show they were in all respects qualified for the position of police officer. This would be evidence that personal damages resulted from the discrimination. On the other hand, an individual's failure to pass the new test, administered following the preliminary injunction hearing but before trial could be resumed, constituted conclusive proof that legitimate, nondiscriminatory reasons existed for rejection. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1011–12 (1 Cir. 1979); *McCormick v. Attala City Board of Education,* supra, 541 F.2d at 1095. Thus, unlike the situation in the *Rodriguez* case, both Ms. Cohen and Ms. Horwitt failed to prove their entitlement to a monetary recovery.

Accordingly, it is ordered that:

1. The plaintiff's application for fees be granted in the sum of $7,875.50;

2. The plaintiff's motion for costs in the amount of $3,489.20 be granted; and

3. The motions for an award of back pay for Ms. Cohen and Ms. Horwitt be denied.