**Joseph MARCI**

v.

**CITY OF NEW HAVEN et al.**

Civ. No. N 79–335.

United States District Court, D. Connecticut.

April 14, 1980.

Eugene N. Sosnoff, Sosnoff, Cooper, Whitney & Cochran, New Haven, Conn., for plaintiff.

Richard Blumenthal, U. S. Atty., Hugh W. Cuthbertson, Asst. U. S. Atty., New Haven, Conn., Arnold J. Bai, Karen Karpie, Bridgeport, Conn., Alvin M. Murray, Asst. Corp. Counsel/Employment & Training, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

ELLEN B. BURNS, District Judge.

Plaintiff's pleadings allege the following facts: Plaintiff had been employed by the defendant city as Director of Manpower Operations since July, 1973. In 1974, the Department of Manpower Operations was absorbed into the newly created Employment and Training Administration [ETA], formed under the Comprehensive Employment and Training Act [CETA], 29 U.S.C. § 801 *et seq.* Plaintiff became the Director of Operations of ETA, under the auspices of defendant Thomas Corso, ETA's Administrator.

On approximately May 30, 1979, plaintiff received a letter from Corso stating that plaintiff's position with ETA was being eliminated, effective June 15, 1979. On June 12, 1979, Corso told plaintiff that his employment could be extended until September 28, 1979. Plaintiff wrote a letter to Corso in which he alleged violations of his seniority rights and which accepted the extension under protest. On June 20, 1979, plaintiff's attorney, Eugene Sosnoff, wrote a letter to Daniel Sachs of the New Haven Corporation Counsel's office, objecting to the administrative hearing set forth in ETA's Personnel Manual, which provides that the hearing officer shall be an attorney from the Corporation Counsel's office, in that the attorney representing defendants Corso and ETA would be from the same office. Attorney Sosnoff suggested that the hearing officer be from the Yale Law School or the American Arbitration Association. In a letter dated June 22, 1979, Attorney Sachs rejected Attorney Sosnoff's claims and suggestions. On July 2, 1979, Attorney Sosnoff wrote to Timothy Barnicle, Regional Administrator for the Employment and Training Administration, United States Department of Justice, outlining his objections to the administrative hearing. Mr. Barnicle's advice was for plaintiff to complete the administrative process, but reserve all rights to appeal. Attorney Sosnoff also complained to the Professional Ethics Committee of the Connecticut Bar Association, which refused to take jurisdiction over the matter. Chief Corporation Counsel Harold Donegan informed plaintiff's counsel that Charles Angelo, a special assistant corporation counsel, was designated the hearing officer. On August 16, 1979, Attorney Donegan communicated his change in position to Mr. Barnicle, stating in a letter:

> ... As Chief Law Officer for this city, I will not appoint an attorney on my staff to act as hearing officer. I have therefore agreed with Mr. Sosnoff that a mutually acceptable attorney, not associated with the City of New Haven, should be designated as hearing officer to hear Joseph Marci's grievance at ... the grievance procedure.

Tom Corso opposes this move.... Mr. Barnicle expressed his agreement with Mr. Donegan's scheme in a letter to New Haven Mayor Frank Logue.

On September 19, 1979, plaintiff filed his complaint, and on the next day sought a preliminary injunction. In open court on September 27, 1979, a stipulated agreement was reached by the parties (later filed on October 12, 1979), which provided that plaintiff would continue at his present job, that none of the parties waived any rights with respect to the complaint or possible defenses, and that plaintiff would pursue his administrative remedies through the Department of Labor.

In November, 1979, Biagio DiLieto was elected mayor of the City of New Haven, previously having defeated the incumbent, Frank Logue, in a Democratic primary held in September. The mayor–elect appointed plaintiff to the position of ETA Administrator, replacing defendant Corso, effective January 1, 1980. The plaintiff concedes that his case is now moot.

Plaintiff has filed a motion for attorney's fees, pursuant to 42 U.S.C. § 1988, which provides in pertinent part:

> In any action or proceeding to enforce a provision of Section [] ... 1983 ... of this title, ... the court, in its discretion,

may allow the prevailing party, ... a reasonable attorney's fees as part of the costs.

The defendants argue that plaintiff is not a "prevailing party" as the intended result, plaintiff's continuation of his employment with ETA, did not materialize through trial or a negotiated settlement, but because of plaintiff's relationship with the newly elected mayor.

█ The law is clear that a party need not win a full trial on the merits to be said to prevail, but the lawsuit must have resulted in or been the catalyst of a victory for the party or the class he represents. *N. A. A. C. P. v. Bell*, 448 F.Supp. 1164, 1166 (D.D.C.1978). There the plaintiff civil rights organization had contested the Department of Justice's twenty–year–old policy not to initiate a civil rights prosecution if a state civil prosecution for the same action taken place. Following the filing of this action, Attorney General Griffin Bell announced a new department policy that "each and every allegation of a violation of the civil rights laws shall be evaluated on its own merits," regardless of any related state prosecution. The court dismissed the complaint, with agreement of counsel that the matter was now moot. The district court awarded reasonable attorney's fees nonetheless:

> ... [T]he Court finds that plaintiffs' persistent prosecution of this action was a strong catalytic factor in the issuance of the Bell memorandum. True, plaintiffs did not obtain monetary relief or federal investigation with an eye toward prosecution.... They did, however, achieve the policy objectives outlined in the ... complaint.
>
> The Court and the parties alike recognized that plaintiffs' major reason for pursuing this lawsuit was to publicize and correct the government policy of deferring to prior state civil rights prosecutions, with its discriminatory impact on ... minority group members. The joint motion to dismiss and the resulting Supplemental Memorandum Order ... identify this as the "primary objective" of the

suit and admit that the Bell memorandum is "in accord" with that policy objective.

*Id.* at 1167.

A related circumstance was discussed by Judge Zampano in *Cohen v. West Haven Board of Police Commissioners*, 485 F.Supp. 958 (1980), where the plaintiff challenged the physical examination administered to applicants to the West Haven Police Department as being discriminatory against females. A five–day hearing was held, at which experts testified concerning the validity, or lack thereof, of the examination. Judge Zampano ruled·that the present test was discriminatory and that plaintiff and all new applicants be administered a modified examination. Plaintiff later failed this new examination. Judge Zampano ruled that plaintiff was a "prevailing party" under 31 U.S.C. § 1244(e), entitled to attorney's fees, in that "she succeeded on most of the significant issues raised in the lawsuit." 485 F.Supp. at 962. The court continued:

> Significant employment goals for women were advanced by plaintiff's lawsuit. A longstanding, sex biased physical fitness test utilized by the City as part of the qualifying procedures for the appointment of police officers was revised making it a sexually neutral examination. The consequences of her successful efforts have had more than a localized influence; numerous surrounding cities and towns have now voluntarily abandoned the [old] test and replaced it with the new examination established for the City of West Haven. Costly and time–consuming litigation has been and will be avoided by the precedent established in this District by plaintiff's actions.... While the plaintiff ... did not accomplish each and every objective of the action instituted by her, the overall result will unquestionably redress serious disparate employment practices for those who wish to serve in the community as police officers.

*Id.* at 962 (citations omitted).

█ In certain respects, the instant case is distinguishable from the *N. A. A. C. P.*

and *Cohen* cases. In this case there was no finding by the court or agreement between the parties that plaintiff's discharge violated any law. Cf. Stipulation ¶ 7. The efforts of the plaintiff and his attorney did not contribute to the "primary objective" of the complaint, i. e., the retention of his job in the ETA administration. The sole circumstance achieving this result was extraneous to this litigation, i. e., the election of Mayor DiLieto and his appointment of plaintiff as ETA Administrator. This result might have been achieved, irrespective of the filing of the complaint. Therefore, the court finds that this lawsuit was not the "catalyst of a victory for the party or the class he represents." *N. A. A. C. P. v. Bell, supra,* 448 F.Supp. at 1166.

■ However, this litigation did precipitate one beneficial change, a revision in ETA hearing procedures so that the hearing officer is a person from outside the city corporation counsel's office, thus eliminating all appearances of impropriety. *Sosnoff Affidavit,* at 8. Cf. Disciplinary Rule 5–105(D). The exhibits indicate that the persistent efforts of Attorney Sosnoff directly contributed in the reversal of Corporation Counsel Donegan's position with respect to the hearing officer. To the extent that plaintiff's counsel is responsible for this change, he is entitled to reasonable attorney's fees. Attorney Sosnoff has submitted a six–page memorandum outlining in detail the number of services devoted to this case. From this memorandum and the affidavits, pleadings, and exhibits filed in connection with this case, the court determines that Attorney Sosnoff expended 13.65 hours, on June 20, June 27, June 28, July 1, July 2, July 10, July 16, July 17, July 20, July 23, August 8, August 9, August 10, August 15 and 21 (through an associate), and September 12, 1979, to the issue of securing a facially impartial hearing officer. The other factors used by this district for determining reasonable attorney's fees include counsel's experience and reputation, the magnitude and complexity of the litigation, the results achieved on behalf of the named plaintiff, the quality of the advocacy, the relative ability of the defendants to pay, and awards in similar cases. *Cohen v. West Haven Board of Police Commissioners, supra,* 485 F.Supp. at 962; *Firebird Society v. Members of Board of Fire Commissioners,* 433 F.Supp. 752, 755 (D.Conn.1976), *aff'd per curiam,* 556 F.2d 642 (2d Cir. 1977). The court finds that, in weighing these factors, plaintiff's counsel is entitled to a total of $887.25 in reasonable attorney's fees, representing an hourly fee of $65.00. Because none of the incurred unreimbursable expenses were shown to relate directly to the hearing issue, the request for allowance of costs is denied.

So ordered.