## CONNOR ET AL. v. COLEMAN, UNITED STATES CIRCUIT JUDGE, ET AL.

No. 75–1184. Decided May 19, 1976

PER CURIAM.

This case is here on movants' motion, supported by the United States, for leave to file a petition for writ of mandamus. The motion is granted. Since the District Court may be expected to conform its proceedings to the views expressed in this opinion, consideration of the petition for writ of mandamus is continued to June 17, 1976.

Ten years of litigation have not yet resulted in a constitutionally apportioned Mississippi Legislature. The District Court for the Southern District of Mississippi in 1966 invalidated the 1962 apportionment. *Connor v. Johnson*, 256 F. Supp. 962 (1966). A legislative apportionment that followed was also declared unconstitutional. Thereupon the District Court promulgated its own plan for the 1967 elections. *Connor v. Johnson*, 265 F. Supp. 492 (1967). Still another legislative plan enacted in 1971 was held unconstitutional by the District Court and another court-ordered plan, this for the 1971

elections, was formulated. *Connor* v. *Johnson*, 330 F. Supp. 506 (1971). That court-promulgated plan, however, was stayed by this Court with direction that the District Court, "absent insurmountable difficulties," should "devise and put into effect a single-member district plan for Hinds County" by June 14, 1971. *Connor* v. *Johnson*, 402 U. S. 690, 692 (1971). The District Court did not divide Hinds County into single-member districts because the court found that there were insurmountable difficulties.

After the 1971 elections this Court addressed the constitutionality of the 1971 court-formulated plan. Because the District Court had retained jurisdiction over plans for Hinds, Harrison, and Jackson Counties and had stated its intention to appoint a special master in January 1972 to consider the subdivision of those counties into single-member districts, we vacated the District Court judgment, without disturbing the 1971 elections, and remanded with direction to the District Court that "[s]uch proceedings should go forward and be promptly concluded," declining meanwhile to consider the prospective validity of the court-formulated 1971 plan until the proceedings were completed and a final judgment was entered respecting the entire State. *Connor* v. *Williams*, 404 U. S. 549, 551–552 (1972). The District Court did not appoint a special master.

In April 1973 the Mississippi Legislature enacted an apportionment plan. Pending decision by the District Court of objections to that plan, however, the legislature in April 1975 adopted new legislation that differed from the 1971 court-formulated plan only in that Harrison, Hinds, and Jackson Counties remained multimember districts. The District Court thereupon dismissed the complaint addressed to the 1973 legislative plan and directed the filing of an amended complaint addressing the 1975

legislation. This was done and the District Court entered judgment approving the 1975 law. *Connor* v. *Waller*, 396 F. Supp. 1308 (1975). We reversed, holding that the 1975 legislation could not be effective as law until after clearance in compliance with § 5 of the Voting Rights Act of 1965, 79 Stat. 439, as amended, 42 U. S. C. § 1973c, and holding further that the District Court erred in deciding constitutional challenges to the Mississippi legislation based upon claims of racial discrimination. *Connor* v. *Waller*, 421 U. S. 656 (1975). We stated expressly, however, *id.*, at 656–657, that the reversal was

> "without prejudice to the authority of the District Court, if it should become appropriate, to entertain a proceeding to require the conduct of the 1975 elections pursuant to a court-ordered reapportionment plan that complies with this Court's decisions in *Mahan* v. *Howell*, 410 U. S. 315 (1973); *Connor* v. *Williams*, 404 U. S. 549 (1972); and *Chapman* v. *Meier*, 420 U. S. 1 (1975)."

Thereafter Mississippi submitted the 1975 legislation to the Attorney General of the United States in compliance with § 5 of the Voting Rights Act. The Attorney General objected and accordingly the District Court held a hearing to formulate a court plan for the conduct of the 1975 elections. By orders entered in June 1975 the District Court promulgated a "temporary plan for the election of Senators and Representatives for the 1975 elections ONLY," Motion for Leave to File Pet., App. 85a, and ordered the parties to file alternative permanent reapportionment plans. The District Court's order of June 25, 1975, stated: "A permanent plan for reapportionment cannot be now formulated due to lack of time. When permanent plan for election of legislators in quadrennial elections of 1979 has been accomplished, special elections may be ordered in those legislative dis-

tricts where required by law, equity, or the Constitution of the U. S." *Ibid.* Motions by the United States and movants sought the fixing of a specific date by which a permanent plan would be formulated and the fixing of a definite schedule for special elections. February 1, 1976, was suggested by the movants as the outside date for making a permanent plan effective, and the date of the November 1976 Presidential election as the date for special elections. On August 1, 1975, the District Court entered an order, Motion for Leave to File Pet., App. 88a, stating: "The Court declines to set a deadline of 2–1–76 for completion of a permanent plan for reapportionment . . . but reiterates its firm determination to have such plan approved before 2–1–76; as to all instances in which a special election may be required, the Court expects to direct the same shall be held in conjunction with the 1976 Presidential election . . . ." Proposed permanent plans were thereafter submitted by the United States and movants, and on January 26, 1976, the United States moved that a hearing be held on February 10, 1976, on the proposed permanent plans. However, three days later, January 29, 1976, the District Court denied the motion stating as its sole and only ground, Motion for Leave to File Pet., App. 90a, that "[f]urther hearing and decision of this case will be deferred until the Supreme Court shall have decided cited cases, at which time this Court will bring this case to trial forthwith . . . ."

The "cited cases" are *East Carroll Parish School Board* v. *Marshall,* No. 73–861, cert. granted, 422 U. S. 1055 (1975); *Beer* v. *United States,* No. 73–1869, probable jurisdiction noted, 419 U. S. 822 (1974); and *United Jewish Organizations of Williamsburgh, Inc.* v. *Carey,* No. 75–104, cert. granted, 423 U. S. 945 (1975). There is no occasion for the District Court any longer to postpone the hearing on the proposed permanent plan awaiting this Court's decisions of those cases. *East Carroll* was

decided March 8, 1976, 424 U. S. 636, and *Beer* was decided March 30, 1976, *ante,* p. 130. *United Jewish Organizations* is not scheduled for argument this Term but no question similar to the question presented in that case is presented in this case. There is accordingly no justification on the ground stated for delaying further a final decision in this long-pending case that complies with *Connor* v. *Williams, supra.* Rather, in our view the District Court should in the circumstances promptly carry out the assurance given in its order of January 29, 1976, to "bring this case to trial forthwith . . ." and schedule a hearing to be held within 30 days on all proposed permanent reapportionment plans to the end of entering a final judgment embodying a permanent plan reapportioning the Mississippi Legislature in accordance with law to be applicable to the election of legislators in the 1979 quadrennial elections, and also ordering any necessary special elections to be held to coincide with the November 1976 Presidential and congressional elections, or in any event at the earliest practicable date thereafter. Assuming as we do that the District Court will promptly conform its proceedings to give effect to these views, consideration of the petition for writ of mandamus is continued to June 17, 1976.

*It is so ordered.*

THE CHIEF JUSTICE concurs in granting the motion but does not join the *per curiam* opinion.

MR. JUSTICE POWELL.

I concur in the granting of movants' motion, but I do not join the Court's opinion. The Court goes beyond what the Solicitor General has requested and beyond what seems necessary at this time. There is no question that the delay in this case appears inexcus-

able—when viewed from Washington. Nevertheless, I would deny the writ on the assumption that the District Court will perform its duty forthwith without the need for a prescribed schedule from this Court.

MR. JUSTICE REHNQUIST, dissenting.

In the course of what purports to be an opinion explaining its decision merely to grant a motion for leave to file a petition for writ of mandamus, the Court proceeds to lay out in minute detail what the District Court *should* do during the next 30 days while the Court "continues consideration" of the petition. Coincidentally, the actions which the Court "assumes" the District Court will take are precisely those sought in the petition for the extraordinary remedy of mandamus. By pretending that it has not passed upon the merits of the petition when it has actually afforded movants their relief, today's decision seems to me more legerdemain than law. If the Court is going to exercise its power to coerce the lower federal courts, I think it obligated to clearly announce that intention, to address directly the question of its authority to do so, see 28 U. S. C. § 1651 (a), and to analyze with care the propriety of such action in the case before it. I have no little doubt as to the Court's authority to afford the relief it pretends to pretermit, and the Court's opinion does nothing to dispel the doubt. But even assuming such authority exists, I believe movants have failed to demonstrate their entitlement to the iron fist which shows so clearly through the Court's velvet glove today. It is true that this case has not been a model for the speedy resolution of litigation. But our previous opinions established no rigid timetable to which the District Court was required to adhere, and I am not persuaded that it is deliberately avoiding its duty to apply the law. Accordingly, I pres-

ently believe I would deny the writ. But even if further consideration and argument on the merits might convince me otherwise, I cannot join today's opinion, which, without any analysis of the difficult legal issues involved, necessarily proceeds upon the unstated premise that mandamus will ultimately issue in this case.