Peggy J. CONNOR, et al., Plaintiffs,

v.

William F. WINTER, et al., Defendants,

The United States of America,
Plaintiff-Intervenor.

Civ. A. No. 3830(A).

United States District Court,
S. D. Mississippi,
Jackson Division.

Aug. 12, 1981.

---

A. Spencer Gilbert, Jackson, Miss., Frank R. Parker, Washington, D. C., for plaintiffs.

William Boyd, Peter Stockett, Asst. Attys. Gen., Jackson, Miss., for defendants.

Before CHARLES CLARK, Circuit Judge, RUSSELL, Chief District Judge, and COX, District Judge.

CHARLES CLARK, Circuit Judge:

For more than fifteen years the efforts of these plaintiffs to reapportion the Mississippi Legislature in accordance with constitutional requirements have occupied the attention of federal courts. At the end of this lengthy process comes plaintiffs' Motion for Award of Attorney's Fees and Litigation Expenses brought under 42 U.S.C. §§ 1973*l*(e) and 1988. Based on testimony, affidavits, briefs, and other supporting documents filed by both parties, plaintiffs are entitled to recover $77,618.75 in attorney's fees, $39,197.17 in litigation expenses, and $10,870.70 in court costs.

## I.

Section 1973*l*(e) provides:

In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendments, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1973*l*(e). Congress enacted this provision in order to enable private citizens to vindicate fundamental voting rights guaranteed by the Constitution. *See* S.Rep. No.94–295, 94th Cong., 1st Sess. 40, *reprinted in* [1975] U.S.Code Cong. & Ad.News 774, 807–08. Nevertheless, the statute expressly limits the recovery of attorney's fees to a "prevailing party." Although there are few cases decided under section 1973*l*(e), there is a well-developed body of case law under section 1988 defining the meaning of "prevailing party." Because sections 1973*l*(e) and 1988 contain substantially similar language, they should be construed similarly. *Riddell v. National Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980).

Under section 1988, it is clear that attorney's fee awards are available to parties even though they enforce their rights by means of a consent decree or without actually obtaining formal judicial relief. *See, e. g., Hanrahan v. Hampton*, 446 U.S.

754, 756, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670, 674 (1980); *Robinson v. Kimbrough*, 620 F.2d 468, 475 (5th Cir. 1980); *Criterion Club v. Board of Comm'rs*, 594 F.2d 118, 120 (5th Cir. 1979). Moreover, the Fifth Circuit has also recognized that a plaintiff may prevail and be entitled to an attorney's fee award when subsequent remedial action by the defendant effectively moots the controversy after the lawsuit has been filed. *See, e. g., Iranian Students Ass'n v. Sawyer*, 639 F.2d 1160, 1163 (5th Cir. 1981); *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980). Furthermore, that a party does not prevail on every claim asserted does not necessarily mean time spent pursuing unsuccessful claims should automatically go uncompensated. *See Maher v. Gagne*, 448 U.S. 122, 123, 100 S.Ct. 2570, 2572, 65 L.Ed.2d 653 (1980); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981); *Watkins v. Mobile Housing Bd.*, 632 F.2d 565, 567 (5th Cir. 1980). *Accord Fain v. Caddo Parish Police Jury*, 564 F.2d 707, 709 n.3 (5th Cir. 1977) (§ 1973*l*(e)).

■ The test of whether a litigant is a prevailing party within the meaning of sections 1973*l*(e) and 1988 is a pragmatic one that focuses on whether he has substantially achieved the result sought or has been successful on the crucial issue in the case. For example, *Robinson v. Kimbrough, supra*, stated that plaintiffs may recover under section 1988 if they are able to show "their lawsuit was a significant catalytic factor in achieving the primary relief sought through the litigation despite failure to obtain formal judicial relief." 620 F.2d at 478. Other decisions frame the inquiry in essentially identical terms. *See, e. g.,*

*Iranian Students Ass'n v. Sawyer*, 639 F.2d at 1163 (a causal relationship between the lawsuit and the relief received); *Coen v. Harrison County School Bd.*, 638 F.2d 24, 26 (5th Cir. 1981) (lawsuit must be a major factor in obtaining relief).

■ The litigation history clearly shows this action was a substantial factor in the legal and political process which ultimately led to reapportionment of the Mississippi Legislature. In 1965 plaintiffs brought this action against Mississippi's Governor, Attorney General, and Secretary of State in their official capacities as the State Board of Election Commissioners, challenging the extreme population variances in the existing legislative apportionment.[1] The district court invalidated that apportionment scheme. *Connor v. Johnson*, 256 F.Supp. 962 (S.D.Miss.1966). After the legislature unsuccessfully attempted to enact a reapportionment that met constitutional standards, the district court formulated its own temporary plan for the 1967 quadrennial elections, *Connor v. Johnson*, 265 F.Supp. 492, 504–07 (S.D.Miss.1967), and the Supreme Court affirmed without opinion use of this temporary plan. 386 U.S. 483, 87 S.Ct. 1174, 18 L.Ed.2d 224 (1967).

In 1971 the Mississippi Legislature enacted another reapportionment. Because the district court could find no justification for the continuation of substantial population variances, it once again held the legislation unconstitutional. *Conner v. Johnson*, 330 F.Supp. 506 (S.D.Miss.1971). The district court consequently promulgated its own plan for the 1971 elections, relying extensively on multimember districts, but did not

---

1. In the amended complaint filed in 1975, plaintiffs also named as defendants the Lieutenant Governor, President Pro Tempore of the Senate, Speaker of the House, and Speaker Pro Tempore. The State of Mississippi now correctly, if belatedly, points out that the members of the state legislature enjoy absolute immunity from suit. *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). *See Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967).

However, this action has always been directed primarily against the state executive officers charged with administering Mississippi's election laws. Indeed, the final judgment entered by the court on April 13, 1979, ran only against the then members of the State Board of Election Commissioners and their subordinates. *Connor v. Finch*, 469 F.Supp. 693, 694 (S.D. Miss.1979). Likewise, the judgment on this motion will only operate against the incumbent election commissioners in their official capacities.

devise a plan for Mississippi's three largest counties, ordering instead interim multi-member representation in these areas. On interlocutory appeal from that order, the Supreme Court stayed the district court's judgment. Emphasizing that in court-ordered reapportionment plans single-member districts are preferable to multimember districts "because they more closely reflect voter preferences," the Court instructed the district court to put into effect a single-member district plan "absent insurmountable difficulties." *Connor v. Johnson*, 402 U.S. 690, 692, 91 S.Ct. 1760, 1762, 29 L.Ed.2d 268, 270 (1971). However, on remand the district court found the difficulties in instituting a single-member plan to be insurmountable, 330 F.Supp. 521 (S.D.Miss.1971), and the Supreme Court denied further interlocutory relief. 403 U.S. 928, 91 S.Ct. 2241, 29 L.Ed.2d 722 (1971).

After the 1971 elections had taken place, the plaintiffs again appealed to the Supreme Court. It unanimously concluded that variances between the largest and smallest Senate and House districts "raise[d] substantial questions concerning the constitutionality of the District Court's plan as a design for permanent apportionment." *Connor v. Williams*, 404 U.S. 549, 550, 92 S.Ct. 656, 658, 30 L.Ed.2d 704, 706 (1972). Nevertheless, the Court declined to consider the prospective validity of the 1971 plan without a final redistricting for the entire state, vacated, and remanded for proceedings before a Special Master. *Id.* at 551–52, 92 S.Ct. at 658–59, 30 L.Ed.2d at 706–707.

However, in April 1973 the Mississippi Legislature enacted a new reapportionment plan for the upcoming 1975 elections. The plaintiffs promptly filed their objections to the plan, but, while its decision was still pending, the district court learned that the legislature was considering revisions to the statutory formula. Accordingly, it further delayed its decision for the expected legislative action. *Connor v. Waller*, 396 F.Supp. 1308, 1311 (S.D.Miss.1975). When the legislature finally acted in April 1975, the court dismissed the plaintiffs' complaint and directed them to file an amended complaint

addressing the new statutory apportionment. After an amended complaint was filed, the district court entered judgment essentially approving the 1975 legislative plan. *Id.* at 1332. The Supreme Court reversed, holding that the legislative reapportionment could not be implemented until it had been submitted and cleared under Section 5 of the Voting Rights Act. *Connor v. Waller*, 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975).

When the 1975 legislative plan failed to obtain Section 5 clearance, the district court formulated another temporary reapportionment plan for the 1975 elections. But the Supreme Court allowed the plaintiffs to file a petition for writ of mandamus compelling the district court to enter a final judgment embodying a permanent reapportionment plan for the Mississippi Legislature. *Connor v. Coleman*, 425 U.S. 675, 96 S.Ct. 1814, 48 L.Ed.2d 295 (1976). The district court thereupon held hearings and adopted a final plan. *See Connor v. Finch*, 422 F.Supp. 1014 (S.D.Miss.1976); *id.* 419 F.Supp. 1089; *id.* 419 F.Supp. 1072.

On direct appeal, the Supreme Court also invalidated this court-approved plan, finding that it "fail[ed] to meet the most elemental requirements of the Equal Protection clause in this area—that legislative districts be 'as nearly of equal population as is practicable.'" *Connor v. Finch*, 431 U.S. 407, 409–10, 97 S.Ct. 1828, 1831, 52 L.Ed.2d 465, 470 (1977) (citations omitted). The Court also found that the plaintiffs had submitted an alternative plan that better served the historic state policy against fragmenting existing political boundaries yet came closer to achieving population equality. *Id.* at 420, 97 S.Ct. at 1836, 52 L.Ed.2d at 477.

On remand, a trial was conducted, and the parties submitted proposed plans to the court. After a settlement conference in June 1978, a plan was developed on which all parties agreed. Eventually the district court entered a final judgment adopting the agreed formula, specifically providing that its plan was to be in "full force and effect

for the 1979 regular state legislative elections and thereafter unless and until altered according to law." *Connor v. Finch*, 469 F.Supp. 693, 694 (S.D.Miss.1979).

Meanwhile, in April 1978, about two months after the trial was concluded, the Mississippi Legislature enacted yet another reapportionment plan. That legislative plan was submitted to the Attorney General pursuant to the Voting Rights Act, and he interposed his objections to it. Mississippi then brought an action in the District Court for the District of Columbia seeking a declaratory judgment that the new legislative apportionment had no discriminatory purpose or effect. Comparing the statutory reapportionment to the 1979 court-approved plan, the District of Columbia court found that the statutory plan did not dilute existing black voting strength and approved it. The Supreme Court affirmed without opinion. *United States v. Mississippi*, 444 U.S. 1050, 100 S.Ct. 994, 62 L.Ed.2d 739 (1980). Although the 1979 court-ordered plan would have remained in effect if the District of Columbia court had not approved the 1978 statutory plan, the legislative plan superseded the court-approved plan and became the final legislative apportionment for the State of Mississippi. *See Wise v. Lipscomb*, 437 U.S. 535, 539–42, 98 S.Ct. 2493, 2497–98, 57 L.Ed.2d 411, 416–418 (1978).

Even though the permanent apportionment plan ultimately put into effect was promulgated by the Mississippi Legislature and not by formal judicial decree, it certainly was plaintiffs' efforts which produced the judicially ordered plan that provoked the legislature to create and submit its statutory plan which received subsequent approval under the Voting Rights Act. Furthermore, the District of Columbia court based its decision approving the statutory reapportionment plan on a favorable comparison with the 1979 court-ordered plan. *See United States v. Mississippi*, 444 U.S. at 1050–1051, 100 S.Ct. at 994–95, 62 L.Ed.2d at 740 (Stevens, J., concurring).

More importantly, however, this litigation provided the initial impetus for the process that eventually brought to fruition the stat-

utory reapportionment under which the citizens of Mississippi elect their legislature. Only when confronted with fourteen years of unsuccessful litigative resistance, invalidation of three successive legislative apportionments, Supreme Court reversal on four separate occasions of plans proposed by the district court, and imminent implementation of the 1979 court-approved plan did the Mississippi Legislature enact an apportionment scheme which passed constitutional muster. The plaintiffs did not prevail in every proceeding in which they engaged and did not obtain a reapportionment plan that embodied every detail of their own plan. But the test of whether they prevailed for the purposes of an attorney's fee award is whether they have substantially received the relief sought or have been successful on the central issue in the litigation. They have undoubtedly satisfied this test— the Mississippi Legislature is now reapportioned in accordance with constitutional dictates. The plaintiffs have prevailed and are eligible to receive an award of attorney's fees.

## II.

■ The State of Mississippi urges that it would be inappropriate to award attorney's fees in this case even though the plaintiffs have prevailed. While recognizing that the district court should ordinarily award fees to a prevailing party, the State invokes the principle that the court should not do so when there exist special circumstances which would render such an award unjust. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1266 (1968). The "special circumstances" exception to the general rule favoring attorney's fee awards is an extremely narrow one and is applied only in unusual circumstances. In *Riddell v. National Democratic Party*, 624 F.2d at 544–45 (5th Cir. 1980), the court reviewed decisions of other courts addressing the "special circumstances" exception and concluded that they fall into two broad categories: (1) situations where, although characterized as claims to vindicate federal constitutional

guarantees, plaintiff's lawsuit was a private state law tort claim for damages and (2) those where, although plaintiffs received the benefits sought in the lawsuit, their efforts did not contribute to achieving those results. Like *Riddell*, the situation presented in this case does not involve either of these reasons for recognizing special circumstances which would preclude an award of attorney's fees. 624 F.2d at 545.

Moreover, none of the other reasons advanced by the State warrants refusing such an award. The State primarily argues that granting an award of attorney's fees in the circumstances of this case would be unjust because the State Board of Election Commissioners was not responsible for the legislative malapportionment, was entirely without authority to alter or amend the existing constitutional deficiencies, and had no control over the reapportionment process. It correctly observes that the Board has only narrowly defined statutory duties and that the power to adopt a new legislative apportionment at all times rested exclusively in the hands of the Mississippi Legislature.[2]

The State's position is untenable, for there is nothing extraordinary about awarding fees to a plaintiff who successfully challenges a state legislative enactment in situations like those presented here. This principle is illustrated by *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1969, 64 L.Ed.2d 641 (1980). There, the Consumers Union brought a first amendment challenge to certain state attorney disciplinary rules against the Virginia Supreme Court, the Virginia State Bar, and individual officers in their official capacities. The district court found that special circumstances made it unjust to award fees against the State Bar or its officers because the Virginia Supreme Court alone had the power to alter the challenged disciplinary rules and because the State Bar and its officers had attempted in vain to persuade the court to change the disciplinary rules in accordance with first amendment requirements. The Supreme Court expressed its view of this holding in the following terms:

> We are not convinced that it would be unfair to award fees against the State Bar, which by statute is designated as an administrative agency to help enforce the State Bar Code. Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction.

*Id.* at 739, 100 S.Ct. at 1978, 64 L.Ed.2d at 658.

Although this passage is contained in dicta, it reflects what we perceive to be the correct approach. When bringing a constitutional attack on a state statute, plaintiffs routinely sue the executive officer charged with responsibility for enforcing the legislative policy, even though the executive neither enacted the disputed statute nor possesses the power unilaterally to repeal it. The Election Commission was the only agency with statewide power to prevent the ballot placement of candidates for election to a malapportioned legislature. While they had no power to create reapportionment, they could control the continued election of members to a legislative body found to be unconstitutionally constituted. The Fifth Circuit has rejected the argument of city officials who claimed that they were "mere functionaries" carrying out the will of the city council. *International Oceanic Enterprises, Inc. v. Menton*, 614 F.2d 502, 503–04 (5th Cir. 1980). That the Board was powerless to effect a legislative reapportionment does not affect its liability for attorney's fees.

Since these executives were sued in their official capacity, this award of attorney's fees will be paid from the funds of the State government. *Hutto v. Finney*, 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2575, 57

---

**2.** The State raises this argument now for the first time, after more than fifteen years of litigation. It has never filed a motion to substitute parties asserting that the Board was not amenable to suit or was unable to accord the relief sought.

L.Ed.2d 522, 535–536 (1978); *McNamara v. Moody*, 606 F.2d 621, 626 (5th Cir. 1979).

■ The additional reasons asserted by the State to constitute special circumstances justifying a denial of attorney's fees are no more persuasive. That the Board may have acted in good faith in carrying out its official duties does not render an award unjust. *Riddell v. National Democratic Party*, 620 F.2d at 471 n.2; *Johnson v. Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979); *Brown v. Culpepper*, 559 F.2d 274, 278 (5th Cir. 1977). Nor is it relevant that the financial impact of paying the attorney's fees will ultimately fall on taxpayers who did not themselves participate in any discriminatory or otherwise unconstitutional act. *Aware Woman Clinic v. City of Cocoa Beach*, 629 F.2d 1146, 1150 (5th Cir. 1980); *Criterion Club v. Board of Comm'rs*, 594 F.2d at 120. In sum, the State presents no compelling justification for denying recovery of attorney's fees to these plaintiffs.

### III.

■ Having decided that the plaintiffs are entitled to recover their attorney's fees incurred during the prosecution of this lawsuit, we must now determine the proper amount of fees to be awarded. In fixing the fee award, this court is governed by the twelve factors set forth in *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977), and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). In accordance with those criteria, we make the following findings of fact from the record in this case:

1. Plaintiffs' counsel has submitted detailed affidavits in support of their claim for fees, extensively documenting the time expended and the expenses incurred in pursuit of the plaintiffs' interests in this matter. These affidavits and testimony by counsel establish that plaintiffs' attorneys devoted a total of 1,269.25 hours to rendering legal services in connection with this case, broken down into the following time periods:

| March 14, 1973 – June 14, 1976: | 427 | hours |
| June 15, 1976 – February 28, 1977: | 276 | hours |
| February 28, 1977 – May 31, 1979: | 566.25 | hours |

The legal services for which fees are claimed are limited to time spent preparing and researching pleadings and briefs, conducting hearings and depositions, drafting correspondence, and other matters which are of record. The time devoted to each matter is not unreasonable on its face, and plaintiffs' counsel has satisfactorily explained the asserted irregularities raised by the State's attorneys on cross-examination. Accordingly, we find that plaintiffs' counsel actually expended the times itemized, that the times spent were all in furtherance of his clients' interest, and that they were reasonable and necessary for the discharge of his professional obligations.

2. This case has presented at various times issues involving the application of constitutional and statutory voting rights requirements to both statutory and court-ordered legislative redistricting plans. It has included problems associated with multimember districts and the need of fragmenting traditional political boundaries to achieve population equality. While the issues presented have not always been novel, they sometimes have been and often have raised complex and difficult problems in their application to the Mississippi system of legislative elections. Moreover, the State has mounted a vigorous opposition at each stage of these proceedings and has allowed no point to go uncontested.

3. To deal effectively with the issues presented in this action required the services of an attorney with consummate legal skills, familiarity with practice in federal courts, and special expertise in matters of legislative reapportionment. The plaintiffs' counsel demonstrated the requisite skill and professional ability, and he secured the principal relief sought by his clients.

4. The litigation has been protracted, and the time consumed necessarily precluded counsel's work on other legal matters.

5. Both plaintiffs and the State of Mississippi have submitted affidavits reflecting the customary fee in this area for civil rights litigation work of this quality and

complexity. These fees range from a low of $35 an hour to a high of $100 an hour. Based upon our review of the record, our own knowledge of prevailing fee arrangements, and the special expertise of plaintiffs' counsel, we find that the following hourly rates are reasonable for the periods involved:

| | |
|---|---|
| March 14, 1973 – June 14, 1976: | $50 per hour |
| June 15, 1976 – February 28, 1977: | $50 per hour |
| February 28, 1977 – May 31, 1979: | $75 per hour |

6. Although plaintiffs' attorney is a regular employee of an organization which conducts civil rights litigation, recovery of a fee was wholly contingent on the successful outcome of the lawsuit. *See Morrow v. Finch*, 642 F.2d 823, 825 (5th Cir. 1981); *Jones v. Diamond*, 636 F.2d at 1382.

7. Time limitations imposed by the client or circumstances are not relevant to the fee calculation in this case.

8. This case involved significant constitutional principles having statewide impact. It helped to secure constitutional voting rights for a broad class of Mississippi voters and completely reorganized Mississippi's system of legislative elections. That the relief sought and obtained by plaintiffs was nonpecuniary in nature is immaterial. *See* S.Rep.No.94–295, 94th Cong., 1st Sess. 41–42, *reprinted in* [1975] U.S.Code Cong. & Ad.News at 808.

9. The State of Mississippi concedes that plaintiffs' counsel has extensive experience in civil rights litigation, enjoys an excellent reputation in his field, and is an exceptionally able attorney.

10. Because plaintiffs' attorney specializes in litigation of this kind and is employed by an organization that routinely accepts this kind of employment, the undesirability of the case is not a factor in fixing an appropriate fee.

11. The nature and length of the professional relationship with the client is not relevant in this case.

12. Awards made in similar civil rights cases fall within the same range as those reflected in the opposing affidavits submitted in this case. *See, e. g., Morrow v.*

*Finch*, 642 F.2d 823 (5th Cir. 1981) ($100/hour); *Davis v. City of Abbeville*, 633 F.2d 1161 (5th Cir. 1981) ($50/hour); *Neely v. City of Grenada*, 624 F.2d 547 (5th Cir. 1980) ($100/hour); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980) ($35/hour); *Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980) ($50/hour); *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977) ($35/hour). However, fees charged in similarly complex federal cases, including antitrust and securities regulation, are higher than those sought here.

In accordance with the foregoing findings, the court assesses the plaintiffs' attorney's fees as follows:

| | |
|---|---|
| March 14, 1973, to June 14, 1976, 427 hours at $50 per hour | $21,350.00 |
| June 15, 1976, to February 28, 1977, 276 hours at $50 per hour | 13,800.00 |
| February 28, 1977, to May 31, 1979, 566.25 hours at $75 per hour | 42,468.75 |
| | $77,618.75 |

In addition to attorney's fees, the plaintiffs are entitled to recover the reasonable and necessary expenses incurred asserting their rights. *See, e. g., Jones v. Diamond*, 636 F.2d at 1382; *Fairley v. Patterson*, 493 F.2d 598, 606–07 (5th Cir. 1974). After considering the affidavits and testimony of plaintiffs' attorney and the additional documentary evidence submitted in support of claimed litigation expenses, we find that the plaintiffs should be awarded the following expenses:

| | |
|---|---|
| Travel, meals, lodging | $ 2,226.70 |
| Consultant fees | 17,795.64 |
| Express mail service | 533.97 |
| Supplies | 96.19 |
| Telephone | 54.43 |
| Typing reapportionment plan | 282.80 |
| Printing Supreme Court briefs | 18,207.44 |
| | $39,197.17 |

Although the State has objected to numerous particular items of recovery, the record shows these objections to be without merit.

The State has filed a motion to review the clerk's action taxing costs in the amount of $10,870.70 against the defendants pursuant to Fed.R.Civ.P. 54(d). The plaintiffs' cost bill has been properly itemized and verified, and the defendants have

not presented any countervailing proof either in the hearing held on plaintiffs' motion or in pleadings before this court. The costs taxed against the defendants by the clerk are proper.

## IV.

In conclusion, pursuant to 42 U.S.C. § 1973*l*(e) the court finds that the plaintiffs are entitled to recover their attorney's fees and litigation expenses from the defendants, the Honorable William F. Winter, Governor of the State of Mississippi, the Honorable Bill Allain, Attorney General of the State of Mississippi; and the Honorable Edwin L. Pittman, Secretary of State for the State of Mississippi, in their official capacities as the State Board of Election Commissioners and not individually, to be paid from public funds in the State Treasury, the sum of $116,815.92.

Court costs in the amount of $10,870.70 shall be taxed in the Bill of Costs pursuant to Rule 54(d), Fed.R.Civ.P.

Judgment will be entered in accordance with Fed.R.Civ.P. 58.

WILLIAM HAROLD COX, District Judge, dissenting:

The majority herein has again cast a sovereign state into perilous and turgid waters to first be cast upon the rocky shores of Scylla because they were powerless to make the necessary changes, then only to be thrust into the dark brown vortex of Charybdis, when because of their impotency they are required to pay plaintiffs attorneys' fees, litigation expenses, and costs.

This suit was originally filed in this Court on October 19, 1965 against the then Governor, Attorney General, Secretary of State, Speaker of the House of Representatives, and the President Pro Tempore of the Senate upon the following allegations:

The defendant Johnson is sued in his capacity as Governor of the State of Mississippi and a member of the State Board of Election Commissioners; as such he is vested with certain authority in connection with elections of members to the Mississippi Legislature.

The defendant Patterson is sued in his capacity as Attorney General of the State of Mississippi, and a member of the State of Mississippi, and a member of the State Board of Election Commissioners; as such he is vested with certain authority in connection with elections of members to the Mississippi Legislature.

The defendant Ladner is sued in his capacity as Secretary of State of the State of Mississippi and a member of the State Board of Election Commissioners; as such he has certain authority in connection with elections of members to the Mississippi Legislature.

The defendant Sillers is sued in his capacity as Speaker of the Mississippi House of Representatives; he is the presiding officer of that body, and is here sued as a representative of all presently acting members of said House, such members constituting a class so numerous as to make it impractical to bring them all before the Court.

The defendant Yarbrough is sued in his capacity as President Pro Tempore of the Mississippi Senate, and he is the presiding officer of that body, and is here sued as the representative of all presently acting members of said Senate, such members constituting a class so numerous as to make it impractical to bring them all before the Court.

In 1975, pursuant to the mandate of this Court, an amended complaint was filed which along with other things substituted the named defendants under Rule 25, Federal Rules of Civil Procedure and added two additional parties.[1]

It does not take the wisest of men nor those with the most insight to see what is

---

1. These parties were William L. Waller, Governor, A. F. Summer, Attorney General, Heber Ladner, Secretary of State, William F. Winter, Lieutenant Governor, B. G. Perry, President Pro Tempore, John R. Junkin, Speaker of the House, and C. B. "Buddy" Newman, Speaker Pro Tempore. The Lieutenant Governor and the Speaker Pro Tempore were included as additional defendants.

obvious in this case. This was a suit against the Legislature of the State of Mississippi. The plaintiffs joined its officers as defendants and deposed its members as witnesses. Not once during the fourteen year course of this litigation was any member of the State Board of Election Commissioners ever deposed, or called as a witness to determine why the Board never undertook, or if it could undertake to *sua sponte* reapportion the Legislature; and to hold that they should have done so in their administrative capacities now, ignores the substance of this litigation for the form.

As the defendants rather poignantly illustrate, the State Board of Election Commissioners is established by § 23–5–1, Mississippi Code of 1972, Annotated and Amended, which has remained unchanged since the inception of this lawsuit.

Due to the lack of specific statutory provisions, the authority, duties and responsibilities of the Board must be implied from other statutes. *Lopez v. Holleman*, 219 Miss. 822, 69 So.2d 903 (1954); Miss.Code Anno. §§ 23–1–1 et seq., 23–3–1 et seq. and 23–5–1 et seq. (1972). However, the Board's duties are specifically restricted to those matters concerning general elections. Miss.Code Anno. § 23–5–134 (1972) Miss. Code Anno. § 3263 (1956 recomp.).

As far as the legislative elections are concerned, the Board has two functions. First, they pass upon the qualifications of independent candidates from multi-county districts; and secondly, they draft the official ballot for those positions in general elections. Miss.Code Anno. § 3106 (1956 recomp.); Miss.Code Anno. § 23–5–134 (1972). Of paramount importance, however, to the instant matter is the fact that the State Board of Election Commissioners possesses *absolutely* no authority to administratively reapportion either the House of Representatives, or the Senate of the Mississippi State Legislature. Such is constitutionally the sole duty and prerogative of each of the individual Houses.

A state agency may not act without constitutional or statutory authority, and to hold the commissioners liable in their official capacity for the failure to assume an unconstitutional and ultra vires act belies reasoning.

Concomitantly, my brethren seem to overlook the fact that before the election commissioners could even undertake such an act, were they constrained to do so, they would first have to obtain approval from either the Department of Justice, or the United States District Court for the District of Columbia pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, which would have in all likelihood extremely doubtful results.

Should the Mississippi State Board of Election Commissioners, or the sovereign State of Mississippi then be held liable?

As defendants rightfully concede one cannot now question the authority of the Courts once relief in the case in chief is granted to award attorneys' fees pursuant to 42 U.S.C. §§ 1973*l*(e) and 1988 against state executive and administrative personnel in their official capacities (*Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); S.Rep.No.94–1011 (1976), U.S. Code Cong. and Admin.News 1976, 5908.); nor may the Court in its discretion deny attorneys' fees to the prevailing party unless in its discretion it finds that "special circumstances" exist. S.Rep.No.94–1011 (1976), U.S.Code Cong. and Admin.News 1976, 5908. In *Newman v. Piggy Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), the Court was called upon for the first time to interpret 42 U.S.C. § 2000a(3)(b) which provided for an award of attorneys' fees to the prevailing party in suits brought by private individuals to enjoin racial discrimination in public accommodations. After a brief discussion of the principles upon which such legislation was passed, the Court indicated: It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. 390 U.S. at 402, 88 S.Ct. at 966, 19 L.Ed.2d at 1266.

The foregoing standard has been embodied in both 42 U.S.C. §§ 1973*l*(e) and 1988,

S.Rep.No.94–295 (1975), U.S.Code Cong. and Admin.News 1965, 774, 807, S.Rep.No.94–1011 (1976), U.S.Code Cong. and Admin. News 1976, 5908, 5912.

The restrictive interpretation placed upon the "special circumstances" exception by the courts renders such in effect a nullity. This interpretation is reminiscent of the passage wherein MacBeth remarked, "Life's but a walking shadow; a poor player, That struts and frets his hour upon the stage, And then is heard no more; it is a tale Told by an idiot, full of sound and fury, Signifying nothing."

Certainly, no one can classify the rights adjudicated in *Chastang v. Flynn and Emrich Co.,* 541 F.2d 1040 (4 Cir., 1976) and as a practical matter those in *Henderson v. Forth Worth Independent School District,* 574 F.2d 1210, vacated en banc, 584 F.2d 115 (5 Cir., 1978), as a private state law tort claim for damages, or situations where the plaintiff's efforts did not contribute to achieving a beneficial result. Therefore, I cannot accept the rather simplistic dismissal which has been given this point.

When viewed in light of the election commissioners' impotency to act and the fact that they have no budget or funds from which an award could be paid, the instant matter clearly indicates that if there has ever been a case made for the "special circumstances" exception this is it! On the one hand you have the Legislature who has sole and exclusive power to rectify the plaintiffs' grievances; yet, it and its members are absolutely immune. On the other hand one finds an administrative agency, none of whose members would personally benefit from any malapportionment, or more importantly who had no right or authority to alter or amend the apportionment for either House. Additionally, none of the members of the Board are members of the Legislature and the Board's only function so far as the instant matter is concerned is to determine the qualifications of only a portion of the candidates for legislative office and draft the official ballot for those positions.

The net effect of this award is to penalize the innocent and helpless officials who have engaged in no discriminatory act, active or passive, and who have no authority or power to reapportion Mississippi. To render this award of attorneys' fees in this matter flies into the face of the very foundations of the principles of equity and fair play upon which this suit is brought.

When viewed in light of the applicable standards, it is a flagrant abuse of discretion to award the plaintiffs attorneys' fees herein. Analyzing the instant situation to that in *Riddell v. National Democratic Party,* 624 F.2d 539 (5 Cir., 1980), the Board cannot only show good-faith compliance with their official duty, but also that there are no funds with which to pay an award and that they possessed no control over the challenged practice in addition to the host of factors already named. Therefore, I feel that in light of the immunity of the *real party* in interest, the Legislature, that special circumstances exist in this matter which render an award of attorneys' fees against the State Board of Election Commissioners manifestly unjust and improper.

When confronted with questions of immunity, the Courts have traditionally since the inception of the union cast aside legal niceties and looked to the real party in interest. *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824); *Jagnandan v. Giles,* 538 F.2d 1166 (5 Cir., 1976).

It is without question that the Lieutenant Governor, the President Pro Tempore of the Senate, and the Speaker of the House of Representatives as well as all the other members of both Houses enjoy absolute immunity from judicial relief, both equitable and compensatory, where sued for acts untaken and performed in their official capacity as legislative officers. *Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975); *Dombrowski v. Eastland,* 387 U.S.

82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); *United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed.2d 1019 (1951); *Star Distributors, Ltd. v. Marino*, 613 F.2d 4 (2 Cir., 1980); *Green v. DeCamp*, 612 F.2d 368 (8 Cir., 1980); *Smith v. Klecker*, 554 F.2d 848 (8 Cir., 1977); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251 (5 Cir., 1976).

Is not then the State of Mississippi immune from an award of attorneys' fees?

Piercing the veil of legal rhetoric herein, I am constrained to and do believe that the thrust of this lawsuit was against the Legislature of the State of Mississippi. As has been demonstrated, the State Board of Election Commissioners are mere functionaries and possessed no constitutional or statutory authority to effect the relief sought herein. Therefore, I am of the opinion that the sovereign State of Mississippi is immune from an award of attorneys' fees herein in that all of the acts wherein complaint is made is of a pure, or wholly legislative question—reapportionment.

In the recent decision of *Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir. 1981), the Court of Appeals expounded upon the applicability of legislative immunity to municipalities and their officers.

After holding that the mayor of Lafayette was absolutely legislatively immune for vetoing certain zoning changes, the Court turned its attention to the legislative immunity of the city.

Succinctly stated, the Court held that in order to determine whether a governmental entity was entitled to claim immunity, the Court would have to examine the facts and view them as stated by the Supreme Court of *Virginia v. Consumers Union*, supra, in light of traditional concepts of immunity under the common law. Since *Hernandez* involved the taking of property without due process of law, the Court held that the city was amenable to damages.

The situation *sub judice* is inapposite. Here we have a situation wherein a claim of legislative immunity was raised over a pure, or wholly legislative question—reapportionment. Although application of reapportionment to traditional concept of immunity is virgin territory as far as precedents are concerned, the reasoning supporting inclusion is irrefragable. When viewed in light of the historical background of the Supreme Court of Virginia wherein the Court held that not only the individual members, but the Legislature as a whole are immune from acts done in their or its legislative capacity, one finds the tradition referenced in *Hernandez* that officials and *state* are absolutely immune from suit and resulting attorneys' fees in reapportionment matters, such being exclusively legislative in function and practice.

The plaintiffs have wholly failed to bear the requisite burden of proof herein. First, the plaintiffs have the burden of proving that the services rendered were both necessary and proper. *Skehan v. Board of Trustees of Bloomsburg St. College*, 501 F.Supp. 1360 (M.D.Penn., 1981). Secondly, it is within the sound discretion of this Court whether to award attorneys' fees; and if it does, the amount thereof. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Thirdly, the reasonableness of the Court's actions are to be judged by the abuse of discretion standard of review. *Johnson*, supra.

In reviewing the time spent by counsel, in the litigation of a claim, the Court in *Johnson* stated: "The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities.... It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it. 488 F.2d at 717."

Bearing in mind the Fifth Circuit's decision in *Harkless v. Sweeny Ind. Sch. Dist.*, 608 F.2d 594, the failure to keep time logs

from the passage of § 402 of the 1975 Amendments to the Voting Rights Act of 1965, 42 U.S.C. § 1973*l*(e), on August 6, 1975, should and does weigh heavily against the plaintiffs. Considering this in light of the items noted in paragraphs 2–13 of defendants' objections, plaintiffs *estimates* are far less than accurate.

Plaintiffs have submitted three affidavits executed by Frank R. Parker claiming 1,272.25 hours for the work he allegedly performed from March 14, 1973 to date. Mr. Parker kept *no* time records, and all of the entries in the affidavits are arbitrary estimates divined by him from a review of his files on, or shortly before the execution date of the affidavits. Exhibit "A" to plaintiffs' motion covers from June 3, 1977 through May 28, 1979, and accounts for 566.25 hours of work; however, according to Mr. Parker's testimony the affidavit and thereby the hourly notations were not prepared until shortly before December 22, 1980, over a year and a half *after the last services* were rendered. Exhibit "B" purports to reflect the services rendered by counsel from March 14, 1973 through June 14, 1976 for a period of over three years; yet, no notations of services were made until June 14, 1976. Exhibit "C" purports to cover from June 15, 1976 through February 28, 1977, a period of over seven months; however, counsel kept no interim time records and on August 10, 1977, estimated he spent 276 hours during that time frame.

The plaintiffs failed to produce any objective evidence that any of the time claimed was actually expended. Rank speculation and conjecture do not sustain, or satisfy the burden of proof. One cannot fathom why a civil rights attorney with the experience of Mr. Parker would operate in such a slipshod fashion. As Mr. Parker testified in the hearing in this matter, he was specifically sent to Mississippi to litigate this matter. Plaintiffs have consistently demanded attorneys' fees throughout the course of this litigation, and why they did not maintain proper records after the adoption of 42 U.S.C. § 1973*l*(e) has not been satisfactorily explained; therefore, I would deny the plaintiffs' request for attorneys' fees.

As for an award of expenses of litigation, I cannot agree with my brethren that *some* of the expenses claimed herein are compensable. Mindful of the Fifth Circuit's decision in *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.), it is important to note that the United States Supreme Court has granted certiorari on the question on which this Court now has spoken. See *Ledbetter v. Jones*, —— U.S. ——, 101 S.Ct. 3106, 69 L.Ed.2d 970 (1981).

Initially, there is the $3,984.15 claimed in expenses from fees and expenses paid to one of the plaintiffs, Henry J. Kirksey, during the course of litigation. The aforesaid payments are tantamount to champerty and maintenance and are not compensable. *Loewen v. Turnipseed*, 505 F.Supp. 512 (N.D.Miss., 1980); *Hodge v. Seiler*, 558 F.2d 284 (5th Cir. 1977); *Skehan v. Board of Trustees of Bloomsburg State*, 436 F.Supp. 657 (M.D.Penn., 1977); Miss.Code Anno. § 97–9–11 (1972).

Next is the $2,251.20 paid to Larry Rand and Rob McDuff as fees and expenses for services as paralegals. Plaintiffs failed to offer even a scintilla of proof as to the paralegal training of either of these gentlemen.

In *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325–326 (5th Cir.), the Court held: "The district court order stated that Ms. Turner was entitled to no compensation for the work hours of Ethel Smith. The salary Ms. Smith received for her work was considered an overhead expense not to be reimbursed by an attorney's fee award. This holding is correct in light of the district court's conclusion that it had not been established that Ethel Smith was a 'paralegal.' Although she was called a paralegal, neither Ms. Smith nor Ms. Turner ever introduced evidence of any paralegal training, and more importantly, most of the time Ms. Smith spent on the case was in the performance of clerical duties. The factual finding of the district court that Ms. Smith is not a paralegal is not clearly erroneous; thus, the court's conclusion that no compensation would be allowed for her work hours is

affirmed." See also *Anderson v. Redman*, 474 F.Supp. 511 (D.Del., 1979); *Willey v. Maben Mfg. Co., Inc.*, 487 F.Supp. 1369 (N.D.Miss., 1979).

During the hearing herein, there was no testimony adduced showing *any paralegal* training, or expertise. Although there was testimony that Mr. McDuff was a student of political science at Millsaps College, Mr. Parker did not know how many hours the gentlemen had, or even what year he was in school. The conclusory statements by Mr. Parker that Rand and McDuff acted as paralegals is less than sufficient to sustain or satisfy their burden of proof.

Plaintiffs also sought compensation for expenses incurred as a result of the retention of the services of certain "experts" who did not testify; i. e., $408.97 for Comprehensive Planners, Inc. or Hoyt T. Holland. Such expenses must not be allowed. *Cohen v. West Haven Bd. of Police Commissioners*, 485 F.Supp. 958 (D.Conn., 1980). The rationale behind this reasoning is obvious. To allow such expense items would condone and reward padding. The Court must encourage judicial economy.

The next item concerns the bill of David Valinsky. Although plaintiffs claim time and expenses for a deposition from Dr. Valinsky, the Court's docket clearly shows that no such deposition was *ever filed*, and the Court *never* had any use and benefit of such. Therefore, under the *Cohen* doctrine the $6,155.99 expense item should not be allowed. See also *Skehan v. Board of Trustees of Bloomsburg St. College*, 501 F.Supp. 1360, 1384 (M.D.Penn., 1981).

Also included in the expense items is a charge of $719.40 from Court Reporters Service for the deposition of Thomas H. Campbell. This item is covered under 28 U.S.C. § 1920 to be taxed as costs and, therefore, should not be allowed as an expense item. *Loewen v. Turnipseed*, supra.

The charge of $282.80 from Lavern J. Holley for typing Sweeny's plan is obviously secretarial in nature and should not be allowed. *Jones v. Armstrong Cork Co.*, supra.

The $29.14 charge from Glen D. Fortenberry for room at the Ramada Inn should not be allowed. As was demonstrated at the hearing, Mr. Fortenberry received his statutory per diem and travel expenses and is entitled to no more. *Willey v. Maben Mfg. Co.*, supra.

The motion filed in the instant matter is for the services and expenses incurred by Frank R. Parker for services performed and expenses incurred by him. Included in the expense items are expenses incurred by George Peach Taylor, $219; and Thomas J. Ginger, $23.72. Neither of these attorneys joined in the motion, submitted affidavits, or testified as to the reasonableness of the charges. They must, therefore, be excluded.

The charges of Frank R. Parker for trips to Washington must not be allowed. From a review of the bills dated May 30, 1975, January 1, 1977, February 8, 1977, and February 24, 1977, the charges were unnecessary and unreasonable. The only reason for these trips offered by Mr. Parker was poor mail service between Jackson and Washington. A review of plaintiffs' expense vouchers reveals the flaw in his logic. Plaintiffs with relative frequency utilized Delta Dash Service and Federal Express which guaranteed next day service. Therefore, the expenses incurred by these needless trips to Washington in the amount of $921.73 must not be allowed.[2]

Certain expenses incurred by Barry Ford should not be allowed. Although plaintiffs again failed to sustain the burden of proving Mr. Ford's qualifications as a paralegal, it appears that the $9.50 item and the $7.09 item were incurred during legal proceedings. Plaintiffs have failed to demonstrate the necessity of his presence at these proceedings and must be denied. *Loewen v. Turnipseed*, supra. As for the $15.30 incurred in the service of subpoenas, such is not a compensable item under 42 U.S.C. §§ 1973*l*(e) and 1988. 28 U.S.C. §§ 1911 et seq.

Finally, the expense items covered by the headings "Express Mail Service," "Sup-

---

**2.** Note that Mr. Parker conceded $33.27 of his January 21, 1977 claim was improper.

1352

plies," and "Telephone" are items normally and properly considered overhead, or costs of doing business and must not be allowed. *Loewen v. Turnipseed*, supra; *Crowe v. Lucas*, 479 F.Supp. 1258 (N.D.Miss., 1979).

In conclusion, I simply cannot agree with the majority herein and must and do respectfully dissent. Certainly attorneys should be compensated for their efforts in vindicating important questions of civil rights. But, there comes a time when the fundamental principles of equity and fairness say stop and from this point I will not budge!

The proposed judgment orders the Governor of the State of Mississippi, the Attorney General of the State of Mississippi and the Secretary of State of the State of Mississippi in their official capacities as State Board of Election Commissioners and, not individually, to pay the plaintiffs a reasonable attorneys' fee and litigation expense in the amount of $116,815.92 and for said sum to be paid from the public funds in the state treasury. There is further awarded the sum of $10,870.70 which is taxed as costs in the bill of cost against the defendants under Federal Rule 54(d) with no provision that said officials shall not be liable for such costs individually, or that they may collect it from the public funds of the sovereign treasury.